ARTHUR D. HUGHES v. CAREY R. DANIELLS AND NATHANIEL I. DANIELLS.

*Sale—Passing of title—Payment.*

The lessee of a flouring-mill agreed to furnish certain machinery to be used therein during the continuance of the lease, which machinery was not to be removed if the lessors paid the lessee the purchase price. During the life of the lease the lessee mortgaged the machinery, and after its expiration agreed to apply certain indebtedness due the lessors upon the purchase price of the machinery, and to receive the balance in performance of the non-removal condition in the lease. The lessee executed a bill of sale of the machinery to the lessors, in which he stated that it was free from incumbrance, and the vendees tendered him his past-due note given to a third party, upon which they had indorsed the said balance, in payment thereof, which note the lessee refused to accept, and the mortgagee replevied the machinery from the vendees after a demand and refusal. And it is held that the payment or tender of the balance of the purchase price was a condition precedent to the passing of title, and that the tender of the note was not a performance of said condition, nor binding upon the lessee or his mortgagee, and that a verdict was properly directed in favor of the plaintiff.

Error to Clinton. (Daboll, J.) Submitted on briefs June 20, 1891. Decided July 28, 1891.

Replevin. Defendants bring error. Affirmed. The facts are stated in the opinion.

*H. J. Patterson,* for appellants.

*Spaulding & Walbridge,* for plaintiff.

LONG, J. This is an action of replevin, brought in the circuit court for the county of Clinton. The plaintiff replevied the property under the writ, and, on the trial before the court and jury, had verdict by direction of the court. Upon judgment being entered on the verdict, defendants bring the case to this Court by writ of error.

It appears that the defendants on April 1, 1889, were the owners of a flouring-mill situate in that county, and on that day made a lease of the mill to one Quincy A. Hughes for one year next ensuing. By the terms of the lease, the party of the second part was to be at one-half the expense of repairing and keeping in repair the water-power, dam, race, etc., in a sum not to exceed $50, during his term. The party of the second part was to keep the books, which were to be open for the inspection of both parties; and as soon as the profits of the milling business should reach the sum of $300 in the aggregate, or when that amount should be on hand, an account of stock was to be taken, and the account settled between the parties, which was to be as often as once a month, and neither party was at liberty to reduce the stock below $300 without the other's consent. At the end of the term the party of the second part was to yield and surrender up the premises. It was provided that should the rent above reserved, or any part thereof, be behind or unpaid at the time the payment became due, the first party had the right to re-enter. The lease contains the following provision:

"The party of the second part agrees to furnish two 4-roller mills, either new or in first-class condition for use, to be delivered at said mills for use in same, to be used during continuance of this lease, with right to remove the same, unless parties of the first part pay said party of second part amount paid by him for said machinery, in which event the same are ¬ot to be removed."

Quincy A. Hughes took possession of the mill under the lease, and operated it for the full year. After taking possession of the mill, he put in the rollers, as agreed under the lease. On February 26, 1890, Quincy A. Hughes, being indebted to the plaintiff in this case, gave him a chattel mortgage upon these two roller-mills, which were then being used in the flouring-mill, then under his control under the lease. This mortgage was filed in the town-clerk's office on March 3, 1890. It appears that after the expiration of the lease, and on April 12, 1890, Q. A. Hughes executed a bill of sale to the defendants of the two roller-mills as follows:

"WACOUSTA, April 12, 1890.
"This is to state that I have this day sold Daniells & Co. two frame roller-mills, now in their mill, and they are free and clear of all incumbrance."

Quincy A. Hughes was called as a witness, and testified, in relation to the sale of the mills to the defendants, that they were to pay in cash for the same; that the defendants asked him if the mills were free and clear, and he told them that they were not; that he still owed Hutchinson on them, and lacked money to pay for and discharge the chattel mortgage, and that he wrote the plaintiff, his brother, that he would pay him the chattel mortgage as soon as Daniells paid for the mills; that at this time the defendants had a claim against him of $118, and they were to pay him the difference between that amount and the cost of the roller-mills; that on the

same day after he made out the bill of sale to the defendants, instead of paying him the difference in money, they tendered him the following note:

"GRAND LEDGE, Mich., July 20, 1888.

"On or before one year after date, I promise to pay to Geo. M. Berry or bearer four hundred and twenty dollars, value received, with interest at the rate of ten per cent., payable at Loan and Deposit Bank.

"Q. A. HUGHES."

Indorsed on back as follows:

"April 12, 1891. Paid on the within note two hundred eighty-seven dollars."

That this was the first that witness knew that defendants held that note.

The defendants gave evidence tending to show that they arranged with Q. A. Hughes for the purchase of the mills some two weeks before the 12th day of April; that there was $118 due them from Mr. Hughes, and they tendered him the note above set forth for the balance; that they asked Hughes if he had the discharge of the mortgage he gave to his brother, and he said he had, but had left it up at the house; that he said he would go and get it; that this was about 9 or 10 o'clock in the morning, and in the afternoon of the same day he came back, and said he was ready to close up the matter, but they then forgot to ask him for the discharge of the mortgage; that they then took the note, and told him he could indorse the balance, $287, on the note, when he said: "You can't come that game on us." They then told him they would indorse the balance on the note, which they did, and tendered him the note. He refused to take it, and went away. The defendants testified that the rolls were worth at that time $405.

The plaintiff testified in his own behalf that the con-

sideration for the chattel mortgage was his signing a
$160 note for his brother to buy these mills; that he
signed another note of $100 for him, and loaned him
$60 or $70; that, his brother being unable to pay the
notes, he paid them, and took them up, and had not
been repaid; that he made a demand upon the defendants
for these roller-mills under the mortgage, and they
refused to surrender them. The mortgage given to
plaintiff recited a consideration of $600, but all the
plaintiff claimed as due thereunder was the amount of
these two notes and the $60 or $70 loaned.

The assignments of error are:

*First.* That the circuit judge erred in permitting the
defendant Carey R. Daniells to be questioned as to what
he paid for the note which he tendered Q. A. Hughes,
and the arrangement under which he procured it.

*Second.* That the circuit judge erred in refusing to
give defendants' requests to charge.

*Third.* That the circuit judge erred in taking the case
from the jury, and directing a verdict for the plaintiff.

These requests to charge are as follows:

"1. The contract between Quincy Hughes and Daniells
provides, among other things, that he, Quincy Hughes,
furnish two roller-mills, either new or in first-class con-
dition, to be delivered at said mill for use in the same,
to be used during the continuance of this lease, with
right to remove the same, unless parties of the first part
pay said party of the second part the amount paid by
him for said machinery, in which event the same are
not to be removed; and I charge you that, if Daniells ·
did settle and pay him, Hughes, as agreed in the lease,
the mortgage given to plaintiff would be void as to the
rolls.

"2. If you find from the evidence that Daniells and
Quincy Hughes did have a settlement as claimed on the
12th day of April, and they then figured up, and Quincy
Hughes turned over possession to Daniells of the rolls in

question, and at the same time gave him a bill of sale, as he did in this case, and accepted the sum of $118 in payment therefor, then that would be a transfer of title to the rolls to Daniells, and the plaintiff cannot recover.

"3. It is claimed by Quincy Hughes that the obtaining of the bill of sale on the 12th day of April, and the acceptance of the $118 to apply on the same, and the relinquishing of the possession of the rolls to Daniells, was with the understanding that cash, and nothing else, should be received in payment for the balance. Then I charge you that, before the plaintiff can recover in this cause, he must show that he, Quincy Hughes, disaffirmed Daniells' understanding of the settlement by returning, or, in other words, paying back, to Daniells the $118 he had received on the rolls.

"4. It is a well-settled principle of law that wherever a party enters into a bargain or agreement to do a thing or receive an article, and at the same time receives part payment therefor, if he wishes to be released from the terms of the agreement by reason of misunderstanding, fraud, or otherwise, before he can do so he must restore to the other party what he has received, because, if he retains the same, it would be a confirmance of the understanding; so, in this case, if you find that Quincy Hughes settled with Daniells, and in the settlement received part payment on the rolls, and delivered to Daniells actual or constructive possession of the same, then I charge you that the plaintiff cannot recover in this suit."

The argument of counsel for defendants upon his third assignment is that, if the conversation between Quincy Hughes and the defendants was to the effect that the defendants were to keep the roller-mills and settle for them, and no particular time was set to close up the settlement, and this understanding was followed up by the bill of sale, together with possession delivered to defendants of the mills, this would constitute a sale to defendants, or, at least, it became a question for the determination of the jury; that it was the duty of Quincy A. Hughes, under the terms of the lease, to pay defendants the $118 he owed them, as this indebtedness arose by Quincy A. Hughes keeping and holding in his possession

this amount, which were profits of the mill belonging to the defendants, and that the non-payment of this amount due the defendants was a violation of the lease, and rendered it void, as to any promise made by Daniells to pay for the mills to prevent Hughes from removing them under the terms of the lease, and that Hughes was absolutely barred from any rights whatever under the lease to enforce it, and could only put himself in condition to claim anything by reason of the lease by paying to the defendants this sum; that not having done this, and not having offered to pay this sum, the defendants had the right to retain the rolls.

We cannot agree with the counsel in this contention. Defendants had the right, by the terms of the lease, to pay for the roller-mills, and keep them; and had payment been made, or tender of payment been made, to Q. A. Hughes, under the circumstances, the mortgagee would have had no right to remove them. It is admitted that the defendants did not pay, nor tender payment, for the roller-mills in such a manner that Q. A. Hughes was bound to accept it. It is apparent that at the time the bill of sale was made Hughes expected that the balance, over and above the amount he owed to the defendants, would be paid to him in cash, and he could not be compelled to deliver them until payment was so made or tendered. The title would not pass to the defendants until such payment or tender was made. The tender made by defendants of the past-due paper of Hughes was not a tender of payment, within the terms of the contract of sale, as explained by the defendants themselves. One of the defendants testifies that he said nothing to Hughes about paying for the mills in that way, or that he held the note, until after the bill of sale was made. Such a tender as defendants claim to have made would not be binding upon Q. A. Hughes or his mort-

gagee. *Hale v. Holmes,* 8 Mich. 37; *Williams v. Jackson,* 31 Id. 485; *Allen v. Hartfield,* 76 Ill. 358; *Bush v. Bender,* 113 Penn. St. 94 (4 Atl. Rep. 213). There was consequently no payment or tender of payment by the defendants for these rolls.

It appears that, when the agreement was made between these parties that the $118 owing by Hughes to the defendants should be applied as a part of the purchase money, it was expected that the balance would be paid in cash, and therefore, the defendants having failed to pay the balance in cash, Q. A. Hughes could not be held to the repayment of the $118 before his mortgagee could have the right to claim the roller-mills under his mortgage. There was no question upon the trial in the court below but that the mortgage was given for a valid consideration, and taken by the plaintiff in good faith, to secure him for the indorsement of these notes and the moneys advanced. One of these notes for $160, was for the money used by Hughes in the purchase of these identical mills.

Some claim is made in this Court that, the mortgage being given for a larger amount than the real consideration, the question should have been submitted to the jury as to the *bona fides* of the mortgage. We cannot find that that question was raised in the court below, and, if it was, we see nothing in the record which should charge the plaintiff with bad faith in the taking of this mortgage. We think the court very properly refused defendants' requests to charge, and directed the jury to return a verdict in favor of the plaintiff. In this view we need not discuss the other questions raised.

The judgment must be affirmed, with costs.

The other Justices concurred.