[No. 10581. Department One.   June 13, 1913.]

## W. L. BENHAM et al., Respondents, v. COLUMBIA CANAL COMPANY, Appellant.[1]

VENDOR AND PURCHASER—CONTRACT—CONSTRUCTION—FORFEITURE—
INDEPENDENT COVENANTS. The vendor's covenant to furnish water is
an independent covenant and does not militate against a forfeiture
clause in the contract for failure to pay taxes, interest and a main-
tenance fee, and default in making improvements within a specified
time, where time was made the essence of the contract; especially
where the maintenance fee was due before there could be any sub-
stantial failure to furnish water, or the ground prepared to receive
it.

SPECIFIC PERFORMANCE—PARTIES ENTITLED—PARTIES IN DEFAULT.
Where time is the essence of the contract, specific performance will
not be decreed at the suit of a vendee in default not acquiesced in by
the vendor.

VENDOR AND PURCHASER—RESCISSION BY VENDOR—RIGHT TO RE-
SCIND—INDORSEMENT OF NOTES AS COLLATERAL. The indorsement as
collateral of notes given for the purchase price of land, does not pre-
vent rescission by the vendor on the vendee's default, where the
notes were subject to withdrawal and under the control of the
vendor; nor where the right to rescind, if in abeyance, was revived
by withdrawal of the notes and their return to the vendee.

SAME—RIGHT TO RESCIND—SET-OFF. The vendor is not precluded
from rescinding the contract on the default of the vendee, as provided
in the forfeiture clause, on an account of a set-off which the vendee
wanted applied on the contract, where the claim was disputed, the
vendor never agreed to make the application, the contract called for
payment in "lawful money" and the vendee had also broken his
agreement to fence and improve the land.

SAME—RESCISSION BY VENDOR—ACQUIESCENCE IN RESCISSION. A
vendee acquiesced in a rescission, and cannot thereafter have a set-
off applied in payment of the contract, where the vendor gave written
notice of rescission and returned the notes, on the default of the
vendee, who retained the notes and thereafter attempted by suit to
collect the sum due on the set-off, and rested on his rights for three
years until the land had trebled in value and part of it had been
resold.

[1]Reported in 132 Pac. 884.

TRIAL—OBJECTIONS TO EVIDENCE. An objection to a summons and complaint as "irrelevant, incompetent and immaterial" does not raise the point that the signature had not been sufficiently identified.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered January 30, 1912, in favor of the plaintiffs, after a trial on the merits before the court, in an action for specific performance. Reversed.

*Shank & Smith* and *Pedigo & Smith,* for appellant.

*Sharpstein & Sharpstein,* for respondents.

Gose, J.—On the 21st day of October, 1905, the plaintiff W. L. Benham, as purchaser, and the defendant, a Washington corporation, as the vendor, entered into a contract for the purchase and sale of eight five-acre tracts of land, "together with the appurtenances thereunto belonging and a water right for the same," situate at Attalia, in Walla Walla county. It was stipulated in the contract that the purchaser should pay for the land "and appurtenances" the sum of $3,800, of which $800 was paid at the time the contract was delivered. The balance was to be paid in $1,000 installments, payable respectively on or before one, two, and three years from date. It was agreed, first, that these payments should be, and they were, evidenced by the purchaser's notes bearing even date with the contract, with interest at the rate of eight per cent per annum, payable annually; second, that the purchaser should pay to the vendor, on the first Monday of May of each year, the sum of $80 "to cover cost of maintenance and operation of the canals and laterals," subject to the right of the vendor "to refuse or cease to permit him to have the use of the water upon the failure of the purchaser to pay the annual maintenance fee," at any time during such default; third, that he would pay taxes for 1905 falling due February, 1906, and that each year thereafter he would pay all taxes and assessments levied against the property "before the same become delinquent"; fourth, that he would erect a substantial and lawful fence around the en-

tire property within one year from the date of the contract, and "cultivate at least one-half of said land within one year from date." In respect to the water, it was agreed that the vendor should cause to be delivered to the purchaser "the water herein provided for"; that the amount of water to be used on the land should be the amount necessary for irrigation purposes between the 15th day of April and the 15th day of October of each year, not exceeding one cubic foot of water per second of time for 160 acres of land; that he should receive the water at headgate points along the company's main canal or from a lateral at such point as to the company should seem most practicable, and that the company should construct suitable measuring boxes or gates, prescribe the manner of delivering, measuring, and regulating the supply to the purchaser, and make reasonable rules and regulations for the service of the district at large, at points of delivery along its main canal, it being agreed that the company owned large tracts of neighboring land which it was selling and which it would also supply with water, all of which, including the land in controversy, it was agreed "must be irrigated to make it valuable." The contract contains two forfeiture clauses, in terms following:

"Time is hereby expressly made to be of the essence of this agreement, and it is especially understood and agreed that in case the purchaser fails to make the payments as set forth in this agreement, or any of them, at the time specified, then the company may, upon any such default, at its option, declare by written notice to the purchaser this agreement to be null and void, and thereupon all rights and interests of the purchasers herein shall utterly cease and determine, and this agreement shall be void, and of no effect, and all payments theretofore made hereunder shall and all improvements shall be forfeited to this company, and the purchaser shall have no right to reclamation or compensation for such moneys paid or improvements made by him, and said land shall remain vested in the company as absolutely and completely as if this agreement had never been made, and upon request the purchaser will immediately surrender possession and control of

said land and all the improvements that have been made thereon.

"In case the purchaser shall fail to pay when due any installment of principal or interest, or the annual maintenance charge, or to pay any taxes or assessments as hereinbefore provided, or fail to perform any other covenant of this agreement, then the whole amount of principal unpaid may at the option of the company be made forthwith due and payable, and, in case of any of the said defaults on the part of the purchaser, this agreement may at the option of the company be declared null and void, and thereupon all payments that shall have been made, and all buildings and improvements on said land, shall be and forever remain the absolute property of the company; and in case of any of said defaults the company shall have the right to shut off the supply of water to the said land until such defaults are each and every of them removed. It is hereby mutually agreed that a written notice mailed to the address of the purchaser as registered or on file in the company's office shall constitute a legal and proper notice of default on the part of the purchaser. The purchaser shall advise the company of any change of address. By availing itself of either of said remedies in case of default, the company shall not be prevented from taking the benefits of any other of said remedies, or any other remedy which it may have according to law, it being understood that each and every of said remedies is cumulative and additional to the remedies which the company would otherwise have."

The purchaser did not pay either the interest, amounting to $240, which became due on October 21, 1906, or the maintenance charge of $80, which became due on the first Monday of May, 1906, or the 1905 or other taxes, and did not fence or cultivate any part of the land. In January, 1907, the vendor notified him that it rescinded the contract on account of his default, and on June 19 following, canceled and forwarded his notes to him by mail. These notes he has ever since retained. The vendor thereupon took possession of the land, and before the commencement of the action, it made three several contracts for the sale of five-acre tracts at $300 per acre, upon each of which a substantial payment was made contemporaneously with the execution of the contract. In

November, 1909, the purchaser, his wife uniting, commenced this action for the specific performance of the contract.

After alleging the making of the contract, it is alleged that, during the entire year of 1905,. the defendant was indebted to the plaintiff husband in the sum of $2,200, "no part of which sum has been paid, except as the same may be applied or may have been applied in payment of the purchase price of the land." During the progress of the trial, they were permitted to amend this averment by adding "which sum plaintiffs have requested to be applied on this contract." It is further alleged, in effect, that the rescission was ineffective because the defendant did not prior thereto cause to be delivered to the plaintiff the water provided for in the contract, or any water whatever, and did not locate any lateral for the plaintiffs, and did not construct measuring boxes or gates, or prescribe any manner for delivering, measuring, or regulating the supply of water; that without water the land, which is arid, could not be cultivated; that if plowed before water was placed upon it with which to irrigate it, it would become loose and dry so that it would be blown by the winds and rendered less productive. It was further alleged that the plaintiffs had tendered $1,350, which with the claim of $2,200 asserted against the defendant, would pay the purchase price of the land; that at the time of the tender, they demanded a conveyance of the land conformably to the contract, and that the defendant refused to accept the tender or to recognize that they had any right in the land. The money tendered was placed in the registry of the court.

The defendant denied that it owed the plaintiffs any sum of money, denied that the plaintiffs had made any request to have any sum applied on the contract, and denied that it had breached its contract in any respect. It alleged affirmatively that, if it ever owed the plaintiffs any sum of money, such indebtedness was not evidenced by any writing, and accrued more than three years prior to the commencement of the action and was barred by the statute. It further alleged that,

because of the failure of the plaintiffs to perform the contract other than the initial payment, it terminated the contract in 1907 by written notice mailed to and received by them, retook possession of the land, and that the plaintiffs acquiesced in the rescission. It is also alleged that, while the plaintiffs were thus acquiescent, it sold to third persons for value "much or all" of the land in controversy, and that the land so sold has been extensively improved at the expense of the purchaser, and that the plaintiffs are in justice and equity estopped to assert any right under the contract. These matters were traversed by the reply.

The judgment provides that, upon payment of $3,000 by the defendant to the clerk of the court for the benefit of the plaintiffs, within sixty days from the date of the judgment, the contract be annulled and delivered to the defendant for cancellation, and that thereupon the clerk should pay to the plaintiffs the $1,350 deposited by them as a tender. It was further adjudged that in default of such payment, the contract be specifically enforced as to five of the lots described in the decree; that the defendant should convey them to plaintiffs by good and sufficient deed in fee simple, clear of incumbrances caused or suffered by it, and that, upon its failure so to do, a commissioner named in the decree should make the conveyance; that thereupon the clerk should repay to the plaintiffs the $1,350 deposited as a tender, the same to constitute "full compensation for the breach of the contract" by the defendant in putting it out of its power to convey the remainder of the land. The court made no findings. The defendant has appealed.

If we understand the respondents' position, it is two-fold in its nature: (1) That the covenant upon the part of the appellant to furnish water was a dependent covenant, and had been broken when the first interest payment fell due; and (2) that, if it be construed as an independent covenant, the appellant could not rescind the contract for nonperformance at a time when it was indebted to the vendee in a sum

largely in excess of the amount then due on the contract, the vendee having requested the appellant to apply it thereon. We must assume that the court found all controverted facts in favor of the respondents; that is, that the appellant owed the respondents $2,200 at the time of the attempted rescission; that the respondents had, at the time of the execution of the contract, requested the appellant to apply it on the contract; and that it failed to furnish water for irrigation in 1906.

We think that the stipulations in the contract, as stated and set forth, make it as clear as written language can make it that the covenant to furnish water was an independent covenant, and that its breach did not militate against the forfeiture clause in the contract. At the time the notice of rescission was given, the respondents were in default on the payment of interest, taxes, and maintenance fee, and had made no improvements. These were made of the essence of the contract, and it was subject to cancellation for the breach of any one of them. The contract may. seem harsh, but the courts cannot stand *in loco parentis* for adults who are mentally capable of contracting, nor can they relieve a party from the effect of a forfeiture for which he has expressly stipulated, where there is no fraud charged or proven. It seems proper to observe at this place that the respondent husband, at the time of the execution of the contract, was the appellant's vice president, and that he continued as such for the period of one year thereafter. By the terms of the contract the appellant became the owner of the improvements upon giving notice of default, so that it cannot be said that a failure to fence and cultivate was nonessential. Moreover, the maintenance fee was due on the first Monday in May, 1906, and the obligation to furnish water did not arise earlier than the 15th day of April. So there had been no substantial breach of that covenant, particularly in view of the fact that the ground had not been prepared to receive water. That the covenant to furnish

water is an independent covenant is supported by: *Spokane Canal Co. v. Coffman,* 54 Wash. 645, 103 Pac. 1106; *Crampton v. McLaughlin Realty Co.,* 51 Wash. 525, 99 Pac. 586, 21 L. R. A. (N. S.) 823. The question is fully discussed in the case last cited, and the reasoning need not be repeated.

Where time is made the essence of a contract, equity will not decree specific performance at the suit of a vendee who is in default in making payments, there being nothing in the acts or the conduct of the vendor that amounts to acquiescence in the delay. *Kiefer v. Carter Contracting & Hauling Co.,* 59 Wash. 108, 109 Pac. 332; *Douglas v. Hanbury,* 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096; *Sleeper v. Bragdon,* 45 Wash. 562, 88 Pac. 1036. The same principle applies to the failure of the vendee to make improvements which are made of the essence of the contract. *Boyes v. Green Mountain Falls Town & Imp. Co.,* 3 Colo. App. 295, 33 Pac. 77; *Enterprise Imp. Co. v. Wilson,* 11 Ky. Law 4, 11 S. W. 437.

It is argued that the right to rescind did not exist when the notice was given, because the notes had been indorsed as collateral. It was shown that they were withdrawn early in 1907, and that "they were subject to withdrawal at any time by the defendant." These facts take the case out of the rule announced in *Shaw v. Benesh,* 37 Wash. 457, 79 Pac. 1007. If they had not been withdrawn when the notice was given, the fact that they were subject to withdrawal at the option of the appellant shows that they were within its control. Moreover, when they were withdrawn and mailed to the respondents, the right to rescind, if theretofore in abeyance, was revived. *Douglas v. Blount,* 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699.

We will next consider the respondents' second position, viz., could the appellant rescind because of the failure of the respondent to keep his covenants, at a time when it was indebted to him in a sum in excess of all sums of money due upon the contract, he having requested it to apply the amount due

him upon the contract? Touching the request to make the application, the respondent husband testified:

"I told Mr. Loose [meaning the appellant's president] when I gave the check on December 8, that is really the time the contract was closed, I sold the property or had arranged with some parties in Portland to take hold of the property, and they delayed about it, and I finally told Mr. Loose I would make the payment, and if the thing did not go through with them I would take it myself and he would take the payments from the amounts due me on the books."

There is neither allegation nor proof that the appellant agreed to make the application. On the contrary, Mr. Loose testified that no such request was made and that the claim itself was always a disputed one. The contract provides that the purchase price should be paid in "lawful money." If the respondent desired or directed the application of the credit, why this provision? There is a two-fold answer to the respondents' position: First, the covenants to fence and improve the land had been broken, and second, the appellant did not agree to accept anything in payment except "lawful money." The covenants to fence and improve the property cannot be read out of the contract. It is the business of the court to construe a contract, not destroy or re-write it. The power to construe does not imply the power to destroy. In support of this contention, the respondents rely chiefly upon *Kennedy v. Davisson*, 46 W. Va. 433, 33 S. E. 291. In that case there had been a decree declaring certain debts to be liens upon Kennedy's land and directing a sale. Kennedy then brought a chancery suit against Davisson to set up certain set-offs against the debt which had been decreed against him and to enjoin the sale under the decree until such set-offs could be investigated and determined, and upon demurrer Kennedy's bill was dismissed. The court there said that "a set-off is a distinct demand, the subject of a cross-action, not a payment"; that "what was in its origin a set-off may by agreement become a payment," and that "here is a distinct

agreement to apply the set-off, and 2 Story Eq. Jur., section 1435, says that 'if there be an express agreement to set off the debts against each other *pro tanto*, there could be no doubt that a court of equity would enforce specific performance of the agreement, although at law the party might be remediless.' " In *Doody v. Pierce*, 9 Allen 141, the plaintiff had made a mortgage to secure a payment of his note. The mortgagees agreed with the plaintiff that he should work for them and that they would apply his wages to the payment of the indebtedness. Before the principal became due, the plaintiff's wages exceeded the note and interest, but no indorsement had been made on the note and there had been no application of any part of the wages to its payment. The court said that the agreement to apply the wages upon the note was executory; that the condition of the mortgage had been broken, rendering the legal estate of the mortgagees absolute, and the plaintiff's estate an equitable right to redeem, and that his bill in equity to compel an application of his wages to the payment of the note and to obtain the legal title to the land was an appropriate remedy.

*Cary v. Bancroft*, 14 Pick. 315, 25 Am. Dec. 393, is to the same effect. In *Hughes v. Daniells*, 87 Mich. 190, 49 N. W. 542, it was held that a tender of past due paper of the creditor is not a tender of payment within the terms of the contract which stipulated for a cash payment. It is the general, if not the universal rule, that payment in anything other than money can only be made upon the distinct agreement of the creditor with the consent of the debtor to accept the thing as payment. *Borland v. Nevada Bank of San Francisco*, 99 Cal. 89, 33 Pac. 737, 37 Am. St. 32; *Taylor v. Lewis*, 146 Mass. 222, 15 N. E. 617.

There is another reason why the respondents cannot maintain this action; that is, that they acquiesced in the rescission. True, the respondent husband says that he informed Loose that he had no right to terminate the contract when the appellant was his debtor for more than enough to pay

the sums due. But on June 9, 1906, and again on the 11th, he wired Loose demanding payment of $2,000 "to apply on account," and on June 12 he wrote confirming the telegrams and saying:

"I have had an account due me from the Columbia Canal Company for over a year and no apparent effort to settle same has been made. Kindly arrange this either by check or note at an early date."

In July, 1908, the respondent husband commenced an action against the appellant in the superior court of King county for the recovery of a money judgment on this claim. Mr. Loose testified the summons and complaint were "made by W. L. Benham," in July, 1908, and said that they were served upon the appellant, but that the suit was not prosecuted. The summons and complaint are signed by Jesse A. Frye, who the respondent husband testified had been his attorney in his attempt to settle this claim. The summons and complaint were admitted in evidence over the objection of respondents that they were "irrelevant, incompetent and immaterial and do not tend to prove any issue in the case." The respondents now urge that the signature of the respondent husband was not sufficiently identified.. We think it was, in the absence of a specific objection raising that question. The fact of the commencement of the suit was not controverted by the respondents. We think the record evidence shows conclusively that the respondents at that time did not desire to have the account applied in payment of the contract, and that the retention of the notes, the demands for the payment of the account, and the commencement of the suit, point with a definiteness amounting almost to a demonstration to an acquiescence in the rescission. *Voight v. Fidelity Inv. Co.*, 49 Wash. 612, 96 Pac. 162; *Herpolsheimer v. Christopher*, 76 Neb. 352, 107 N. W. 382, 111 N. W. 359, 9 L. R. A. (N. S.) 1127; *Moran & Co. v. Palmer*, 36 Wash. 684, 79 Pac. 476. This view is given added weight by the fact that the respondents waited for nearly three years after

receiving notice of the rescission before filing their bill, the property having in the meantime trebled in value.

The judgment is reversed, with directions to dismiss the action, the appellant to recover its costs.

Crow, C. J., Chadwick, Mount, and Parker, JJ., concur.