[No. 16073.  Department One.  January 31, 1921.]

LEE FRENCH et al., Respondents, v. C. D. & E. INVESTMENT COMPANY et al., Appellants.[1]

CANCELLATION OF INSTRUMENTS (6, 7)—VENDOR AND PURCHASER (60, 159)—RESCISSION FOR FRAUD. An executed contract for the sale of land may be rescinded for fraud entering into the making of the contract, and the purchaser's remedy is not limited to a suit at law for damages for breach.

CANCELLATION OF INSTRUMENTS (7) — EXECUTED CONTRACTS. Where arid lands and water rights in a contract for conveyance are dependent, one upon the other, a deed of the land alone does not make it an executed contract, and bar a cancellation.

WATERS AND WATER COURSES (65)—CONVEYANCES—RIGHTS APPURTENANT TO LAND. Where a vendor contracted to give a deed of land "together with a perpetual water right appurtenant to and laid in the S. canal," fixing a separate price for the water rights, a deed of the lands alone does not pass the water rights as an appurtenance.

[1]Reported in 195 Pac. 521.

VENDOR AND PURCHASER (88-93) — PERFORMANCE OF. CONTRACT—
DEPENDENT COVENANTS. Under a contract for the sale of arid land
together with certain water rights, the land and water were de-
pendent one upon the other, and the contract cannot be fully per-
formed as to one part without the other.

SAME (73)—RESCISSION OF CONTRACT—ACTIONS—EVIDENCE—AD-
MISSIBILITY. In an action to rescind a contract for the sale of land
and certain water rights, in which the defendants admit an in-
ability to convey the water rights, the question of fraud in the
making of the contract is immaterial.

SAME (159-173)—REMEDIES OF PURCHASER—RECOVERY OF PRICE—
PARTIES LIABLE. Where, after making a contract for the sale of
land, the corporation changed its name, and a new company of the
old name was formed, taking over part of the old assets, and re-
ceived all the payments made by plaintiff, turning them over to the
old company, all without the knowledge of the plaintiff, both com-
panies are properly held liable to plaintiff on rescission of the
contract.

SAME (74)—RESCISSION OF CONTRACT—ACTIONS—NATURE AND EX-
TENT OF RELIEF. In an action to rescind a sale of land, in which
the purchaser sought recovery of the purchase price and tendered
a reconveyance, but failed to keep the tender good by bringing the
deed into court, judgment for the plaintiff should provide for a re-
conveyance of the property.

Appeal from a judgment of the superior court for
King county, French, J., entered February 6, 1920,
upon findings in favor of the plaintiff, in an action for
rescission, tried to the court. Modified.

*Hartman & Hartman,* for appellants.
*Black & Black,* for respondents.

BRIDGES, J.—In April, 1910, the appellant, Calhoun,
Denny & Ewing, a corporation, and Lee French, of
Everett, Washington (for the benefit of himself and
his wife), entered into a written agreement whereby
the corporation undertook to sell, and the individual
to purchase, a certain tract of land and certain water

rights, which lands are located in Benton county, Washington, and are within the Government Sunnyside Canal district.

The property contracted to be sold is described in the agreement as follows:

"Tract twenty-three (23) of Crown Point Orchards, according to the recorded plat thereof on file in the office of Calhoun, Denny & Ewing, together with a perpetual water right appurtenant to said lands, in the Sunnyside canal, for the use of water for irrigation of said land and for domestic use incidental thereto, as hereinbefore provided."

The contract then recites that the purchase price of the land is to be $1,486.80, a portion of which is paid down in cash, and the balance to be paid in equal annual installments, with interest. The purchase price of the water right is fixed in the contract at $529.20, a part of which is paid in cash, the remainder to be paid in equal annual installments. The contract further provided that, in addition to the payments for water rights, the purchasers should pay to the vendor $9.60 per annum, "the same being a maintenance fee or charge for the use of water on said land." The last mentioned annual payments were required to be made until the purchase price of the land and water right had been fully paid. In other respects the contract was the usual one for the sale of lands.

The purchasers regularly paid the annual sums required by the contract, and ultimately all payments as therein provided were made. Thereafter the vendors made, executed and delivered to the vendees a deed conveying the title to the lands, but this deed did not make any mention of the water rights. Based upon these general facts, the vendees, as plaintiffs, brought this suit against the vendor and others, as defendants, to recover the money paid under the contract.

The complaint is exceedingly long and we can do nothing more than give a brief summary of its contents. It alleges in a general way all of the facts which we have heretofore recited. It further alleges that the plaintiffs, at the time of making the contract, were residents of the city of Everett, which was more than one hundred and fifty miles distant from the land described in the contract; that, after having made all of these payments, they discovered for the first time that the vendor was not the owner, at the time of the making of the contract, of the water rights therein mentioned, and had never since become the owner thereof, and that under the rules and regulations of the government, it could never become the owner of such water rights, and that the plaintiffs could never become the owner thereof and were not entitled to make application therefor, unless they gave up their residence in the city of Everett and resided on the land, or within fifty miles thereof, and that they were not willing to make these sacrifices; that the vendor had been guilty of fraud in the making of such contract in that it knew it did not have, and would be wholly unable to obtain, the water rights mentioned in the contract, and would never be able to comply with the contract in that regard; and that, in making the contract with this knowledge, it had been guilty of misrepresentation and fraud and that, had the plaintiffs known that the vendor did not have, and could not obtain, these water rights, they would never have entered into the contract.

The complaint further alleged that the land was practically valueless without the water for irrigation purposes, and that prior to the bringing of the suit, the vendor had delivered to the plaintiffs a deed to the title to the land described in the contract, and that they had made and executed a deed from themselves to the ven-

·dor, reconveying to it any and all interest which they may have obtained by virtue of such deed, and tendered :the same to the vendor who refused to accept it. They ·sought relief against the defendants in the sum of two thousand nine hundred dollars, being the amount they ·had paid for the land and the water right, together with interest·thereupon and for a rescission of the contract.

In brief, the plaintiffs charge that the vendor agreed to sell them certain land and also certain water rights, and that the whole purchase price has been paid and the land has been deeded to them, but that the vendor has not conveyed and cannot convey to .them the water ·right because it does not own it and cannot acquire it, and that the vendor has been guilty of fraud, and they .seek to recover the money paid by them.

It will not be necessary here to give the substance of ·the answers of the various defendants because, in the further discussion of the case, their defenses will clearly appear.

The suit was tried to the court as an equity case. Judgment went in favor of the plaintiffs and against the defendants C. D. & E. Investment Company, a corporation, and Calhoun, Denny & Ewing, a corporation, ·in the sum of three thousand and sixteen dollars, and dismissed the other defendants out of the case. The ·defendants against whom the judgment ran have appealed.

At the outset there seems to be a great deal of discussion and confusion concerning the character of action the respondents were entitled to bring, if any, and the character of the case they have brought and the manner of its trial.

A recurrence to some fundamental principles will, ·we think, tend to lead us in the right direction. The

appellants contend that, inasmuch as they had given a deed to the respondents conveying to them the title to the land, they cannot maintain a suit in equity to rescind the contract and recover the purchase money paid, but that their entire right of action, if any, is for damages based upon the covenants in the deed. The authorities seem to lay down the following rules: Where a contract for the sale of land has been executed by the delivery of instruments of conveyance, as provided in the contract, then the purchaser's right of action must always be by a suit at law for damages, based upon a breach of the covenants of the deed. There is, however, one well defined exception to this rule, and that is that an executed contract may be rescinded and the amount of the purchase price recovered by a suit in equity where it is alleged and proven that fraud entered into the making of the contract. It is very generally held that executory contracts for the sale and purchase of real estate may be rescinded by a suit in equity, either on account of fraud or misrepresentation entering into the execution of the contract, or where it becomes apparent that the vendor is and will continue to be unable, or has failed, to comply with his contract. We deem it unnecessary to extensively cite authorities upon these fundamental principles. We do nothing more in that regard than cite 27 R. C. L. pp. 623, 626, 650.

We gather from the record that the respondents had one theory concerning the manner of the trial, the appellants had another, and the trial court had still a third. The respondents sought to prove, among other things, that the contract sued upon provided for two things, to wit, the land and the water rights and that, at the time of making the contract, the appellants were guilty of fraud and overreaching in representing to

them that they could deliver to them the right to use the water from these Sunnyside irrigation canals.

The trial court, however, held that such testimony was not only immaterial, but was incompetent because it would tend to vary the terms of the contract, which it decided were clear and certain. On the other hand, the appellants sought to introduce evidence tending to show that, before the contract was entered into, they had fully informed the respondents concerning these water rights and how they might be acquired, and that they would have to make application to the government therefor, and that the moneys necessary to be paid on such application would be furnished by appellants, and that the water moneys provided for in the contract were for that purpose. But the trial court again held that such testimony was incompetent and refused to receive it, saying, time and time again, that the contract spoke for itself, and that by its terms the appellants had agreed to sell not only the land, but the water right also, and that they now conceded they did not own, and could not convey, the latter, and that there was nothing else to the case. At the trial, it seemed to be conceded by the appellants that they did not own the water rights separate from the land, and could not give the respondents any separate and independent title to such water rights. This brings us down to the fundamental question in this case and that is, whether the giving of the deed by appellants to respondents made this an executed contract. If it did, and the question of fraud was properly eliminated by the court, then the action must have been one at law, based on the covenants of the deed, and the present action cannot be maintained.

The appellants seem to argue that, since the contract provided for the sale of the land, "together with a

perpetual water right appurtenant to said lands, in the Sunnyside canal . . .," the deed to the land carried with it the water right as appurtenant thereto, just the same as a deed to land will transfer the title to any permanent improvements on the land, or to anything appurtenant thereto and that, consequently, the contract had been executed.

We cannot agree with this contention. It is plain to our minds that the water rights which appellants contracted to convey were something different from the ordinary appurtenances to land and the mere fact that the contract speaks of the water right as being appurtenant does not make it so. If, as appellants argue, a deed conveying the title to the land would carry with it this water right, then, why all the separate and independent provisions in this contract with reference to the water right? Why were the water rights mentioned at all? Why, otherwise, did the contract not fix a total sum for the land and all appurtenances and agree in the usual manner to convey the title to the land? The mere fact that the contract expressly provides the purchase price for the water right separate from that of the land itself, is sufficient to show that the parties understood that the water right was not such an appurtenance as would be carried by a deed conveying the title to the land. There is enough in the record to show this land, because it was within the district of the Sunnyside canal, was entitled ultimately to receive waters from such canal for domestic and other purposes, but that, in order to acquire the right to obtain such water, application must be made to the government, and that certain payments had to be made to the government therefor before the right to obtain the water could be had, and that this application could be made only by an individual who resided either on, or within fifty miles of the land.

The deed, doubtless, had the effect of conveying to the respondents the right to make application to the government for water rights, but it did not and could not convey the water right because it was something distinct from the land. The right to make application to the government for the use of this water is one thing, and the right to use the water is an entirely different thing. It was the former that the deed to the land carried, and it was the latter that the appellants contracted to deliver.

But appellants further contend that, in any event, those portions of the contract which agree to convey the title to the land and to the water rights are separable and independent, and the respondent, having obtained a confessedly good title to the land, could, under no circumstances, recover more than the amount they had paid for the lands, whereas the lower court had permitted them to recover also what they had paid for the water right. We do not agree with this contention. The testimony very conclusively shows, and the trial court announced himself as being well satisfied in that respect, that the land was of little or no value without the water, and, of course, the water was of no value to the respondents without the land. They are absolutely dependent one upon the other. The provisions for their purchase and their purchase prices were contained in one and the same contract. It cannot be said, therefore, that the contract had been fully performed in any respect, either as to the land or as to the water right.

The conclusion to which we have come is not in violation of the principles laid down by this court in the cases of *Crampton v. McLaughlin Realty Co.*, 51 Wash. 525, 99 Pac. 586, 21 L. R. A. (N. S.) 823; *Spokane Canal Co. v. Coffman*, 54 Wash. 645, 103 Pac. 1106;

*Benham v. Columbia Canal Co.,* 74 Wash. 110, 132 Pac. 884. In the case last cited, a contract was entered into whereby the vendor agreed to sell a five-acre tract of land, "together with the appurtenances thereto belonging and the water right for the same." The contract further provided that the water right mentioned was water which the vendor agreed, under certain circumstances, to deliver on the land for the use of the purchaser. It was very properly held that the contract to furnish the water was entirely independent of the contract to convey the title to the land, and that the purchaser's right of action was against the vendor to require him to live up to the terms of the contract.

The facts in the other cases are similar to those in the *Benham* case. In the *Crampton* case the contract agreed to convey the title to certain lands for a specific consideration, and it further provided that the vendor would, free of cost to the purchaser, put in certain cement sidewalks and sewer and water mains within one year from the date of the contract. It was very properly held that the agreement to make these repairs was entirely independent of the covenants for the sale of the lands.

A case much more like the one at bar is that of *Ihrke v. Continental Life Ins. etc. Co.,* 91 Wash. 342, 157 Pac. 866, L. R. A. 1916F 430. The contract there provided for the sale of certain lands for a named consideration, and the vendors further agreed to plant the tract of land sold to certain fruit trees and to cultivate the same for a certain period. This court held that the contracts to sell the land and to plant it to orchard were not severable.

We therefore conclude that the contract was not an executed one, and that the purchaser had a right to maintain this action in equity for the rescission of the contract, regardless of any fraud.

We are also of the opinion that the trial court was correct in his holding that the question of fraud, although alleged, was not in the case. It is plain that, by the terms of the contract, the appellants were to sell and convey the title to two dependent things, to wit, the land and the water right; and since they admitted in this case they had not complied with and could not comply with that portion of the contract with reference to the water right, the matter of any representations made or knowledge by the purchaser at, or prior to their entering into the contract, would be immaterial, if not incompetent, as tending to vary and contradict the terms of the contract.

The case resolves itself into a very simple question and that is, that the appellants agreed to sell something the title to which they are unable to deliver, and we do not see any escape from the conclusion that the respondents are entitled to rescind and recover the purchase money paid by them, together with interest.

The judgment went against C. D. & E. Company and Calhoun, Denny & Ewing Company. It is claimed that it was error to give judgment against the latter. The names of the various companies are confusing. The original company was called "Calhoun, Denny & Ewing," a corporation. It was this company which made the contract involved here. Thereafter it changed its name to "C. D. & E." Company. At the same time a new corporation was formed under the name of the original or parent company, to wit, "Calhoun, Denny & Ewing" Company. In the transactions the C. D. & E. Company obtained a large portion of the assets formerly owned by the original Calhoun, Denny & Ewing Company, including the land here involved, and the remainder of the assets went to the new corporation, to wit, Calhoun, Denny & Ewing Com-

pany. But respondents did not know of these changes of names and formation of new companies till about the time they brought this suit. They made all their payments to the new Calhoun, Denny & Ewing Company, supposing it to be the company which made their contract. This new company accepted their money and gave them its receipt therefor. The record shows, however, that this new company paid all sums so received to the C. D. & E. Company, of which fact, however, the respondents had no knowledge. Under these and other facts shown by the record, we think the judgment was properly given against both companies.

However, the judgment, as it is, cannot stand. It allows respondents to recover a certain sum of money but made no provision whatever concerning the land. As the case now stands, the respondents have the title to the land and also a judgment for all of the money which went to pay for it. Manifestly, this situation cannot be upheld. It is true the complaint alleges, and the testimony shows that, prior to the bringing of the action, the respondents tendered the appellants a deed conveying any interest in this land which they may have obtained, on condition that the purchase money be returned, and that the appellants refused to accept the deed or return the purchase money; but so far as we can find from the record, the respondents have not kept their tender good, because they did not bring their deed into court.

If, within thirty days immediately following the filing of the remittitur in the lower court, the respondents make good their tender of the deed by depositing the same in this cause, with the clerk of the superior court, for the appellants, the judgment appealed from will stand affirmed; otherwise it is reversed and the case remanded with directions to dismiss the action.

Neither party shall recover of the other any costs of this appeal.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOL-COMB, JJ., concur.