Jacob J. Schwabtzwald, J.
By this application petitioner seeks issuance of a turnover order against the assignee for the benefit of creditors upon the ground that the assignee is in possession of the proceeds from certain accounts receivable of the assignor alleged to be the property of the petitioner as the purchaser thereof, pursuant to the terms of a factoring agreement theretofore made with the assignor.
On the basis of the admitted facts appearing in the principal motion the assignee cross-moves for a turnover order directed against petitioner to recover the proceeds of accounts receivables remaining in the petitioner’s hands (approximately $2,600), upon the same ground as urged in defense to the principal motion, as is hereafter detailed.
It is the assignee’s contention, in effect, that petitioner had neither authority under the factoring contract nor legal right to charge against the assignor’s credit account then remaining in the factor’s hands, constituting the net balance purchase price due the assignor upon sales of accounts receivables to the petitioner, debts of the assignor which the factor had meanwhile purchased from the assignor’s creditors.
The essential facts appear in the petitioner’s moving papers. Petitioner, Ambassador Factors Corp., is engaged in the business of factoring accounts receivable. In March, 1959 it entered *98 into a written agreement with the assignor, Tiffany Lingerie, Inc., hereinafter referred -to as Tiffany or as assignor. The document is termed a factoring contract. The terms of the contract are printed upon a form of agreement obviously prepared for and used solely by Ambassador.
For better understanding of the issues raised herein, some of the contract’s pertinent provisions will be here included, with emphasis furnished upon the critical words and phrases. From paragraph (1): “You [Tiffany] hereby appoint us [Ambassador] your sole factor on the following basis: You agree to, and hereby, sell and assign to us all accounts receivable * * * arising out of all of your sales * * *. We are to purchase such Receivables without recourse to you, * * * provided that the sale and terms thereof are approved by us in writing * * *. At the time of each sale, you shall execute and deliver to us a written assignment of the Receivable, * * * but even in the absence of such assignment each Receivable created by you shall be deemed assigned to us and shall become our property immediately upon shipment of the merchandise.” From paragraph (2): “ The purchase price which we shall pay to you for Receivables acceptable to us shall be the net face amount thereof * * * less our factoring charge equal to % of one percent * * *. At the time we purchase Receivables, we are to pay you a sum up to eighty percent * * * of the purchase price and we are to pay the balance of the purchase price less any discounts and any charges or debts due to us (including any amounts which we may be obligated to pay in the future), at the average due date of said Receivables * * Invoicing of sales shall be made by you or, at our option, by us, and each invoice shall bear a notation that the account has been assigned and is payable to us only. Billing of such invoices, by whomever done, shall operate as an assignment to us. Immediately upon the shipment of any merchandise you will give us original and duplicate copies of each invoice.” From paragraph (7): “All checks, notes, acceptances, other instruments, or cash received by you with respect to any Receivables are to be held in trust for us and immediately turned over to us without deduction.”
The petition alleges (par. 6) that Ambassador “ became the owner of all receivables created by sales of the assignor ” during the period March 16,1959, the contract date, to October 19,1959, the date of the filing of the assignment for benefit of creditors.
The assignee has admittedly received certain remittances from the assignor’s debtors pertaining to receivables to Avhich peti *99 tioner claims ownership under the various terms of the contract. No specific assignment of the receivables was made nor were the items specifically reported at any time to the petitioner. It is the proceeds of these receivables which petitioner claims that the assignee holds in trust for Ambassador. The assignee’s position is that no assignment of these particular accounts was ever made and that, in any event, Tiffany was not indebted to Ambassador at the time Tiffany executed the assignment for benefit of creditors, but urges instead that Ambassador presently owes Tiffany a balance under the factoring contract.
Ambassador counters with the further claim that it had advanced an additional $20,000 to Tiffany at a time when Tiffany’s account was overdrawn, upon Tiffany’s specific representation that schedules of the particular receivables, here the subject of dispute, were being prepared and would be forwarded to petitioner.
The receivables to which petitioner claims ownership arose out of sales made by the assignor between September 1 and September 24,1959. The $20,000 referred to was paid to Tiffany in three separate amounts, during a nine-day period ending on September 22, 1959, which according to Ambassador was advanced to Tiffany after informing it “ that they had no equity available.”
The assignee also asserts that the assignor was apparently insolvent on September 23, 1959 and definitely insolvent on October 19,1959, and that such facts were either known or should have been known by the factor.
It is the assignee’s position that, while Ambassador is a creditor, it is an unsecured creditor, and that Ambassador should not be permitted to secure payments ahead of the unsecured creditors by its action of self-help in applying money due Tiffany under the contract to the payment of Tiffany’s unsecured paper acquired by the petitioner.
The facts and arguments in support of petitioner’s claim are here included in detail. Ambassador admits that it deducted from moneys owing to Tiffany under the factoring contract almost $15,000, characterizing the transaction as a “ charge ’ ’ against Tiffany’s account. It states that the charge resulted from its ‘ ‘ purchases made from other clients of the petitioner, and those clients’ receivables from Tiffany [which] were assigned to us, amounted to $14,938.58 and were all past due at the time the request for such advances were made.” Ambassador claims it is immaterial how Tiffany’s obligation to petitioner arose. Further, it cites the contract as specifically *100 granting that right. It urges, “ we [Ambassador] are to pay to the assignor any balance ‘ less * * * any charges or debits due to us ’ [contract, par. 2] and * * * ‘ shall be entitled to hold all sums to your [Tiffany’s] credit as security for D. R. sales, outstanding claims and any and all obligations owing to us by you, however arising.’” (Contract, par. 8, emphasis supplied.)
The focal point of the controversy hinges upon the determination of the status of the parties’ financial relationship at the time the factor advanced the $20,000 to Tiffany and this in turn is dependent upon Ambassador’s right in deducting from the unpaid balance of the purchase price due Tiffany, Tiffany’s own third-party debts acquired by the factor.
The court does not find support for petitioner’s contention, that Tiffany’s obligation to pay Ambassador the third-party debts, arose from the factoring agreement. Ambassador claims the contract expressly included all Tiffany’s obligations to petitioner ‘ ‘ however arising” (contract, par. 8) or “however created ” (contract, par. 9).
The court views the factoring agreement as being nothing more than an arrangement between the parties wherein the factor for a stated price purchased the accounts receivable from Tiffany, who was thereby enabled to receive immediate funds to finance its business rather than be compelled to wait for payment from its customers in the regular course of business. The contract does not specify that Ambassador would be entitled to charge against Tiffany’s accounts liabilities which arose outside the scope of its provisions. The effect of phrases, “however arising ”, and “ however created ”, may properly be restricted in their meaning as referring to matters arising from and created by virtue of the parties’ relationship under the contract.
At best the court deems the language used, when read in conjunction with the intent expressed in the contract as a whole, as being ambiguous and not warranting the interpretation sought by petitioner (Gillet v. Bank of America, 160 N. Y. 549). In the Gillet case a similar contract provision was held to be insufficient authorization to a bank to apply the debtor’s third-party obligations purchased by the bank against the debtor’s collateral in the possession of the bank as security for payment of a direct loan made by the bank to the debtor. In the language of the Gillet case (p. 554): “ If there is any uncertainty or ambiguity as to the meaning of the agreement, it should be resolved in favor of [Tiffany], as it was the [petitioner] who prepared this contract.” See, also, Rentways, Inc., v. O’Neill Milk & Cream Co. (308 N. Y. 342, 348).
*101 The promisor, such as Ambassador is here, having promised to pay the purchase price at a time and in a manner stipulated by contract is bound to “ fulfill his promise according to its terms unless some legal excuse can be found ” (3 Williston, Contracts [Rev. ed.], § 887A, p. 2494).
No legal excuse has been offered. Ambassador’s resort to self-help is without legal justification. Mutual debts, though liquidated, “ do not extinguish one another pro tanto, either automatically or by manifestation of election by one party ” (Williston, op. cit., § 887E, p. 2503). For a claim to “ cancel a cross-claim pro tanto, it must not only be pleaded by way of set-off or counterclaim or recoupment, but judgment must be rendered for the difference between the two claims ” (2 Williston, Sales [Rev. ed.], § 467i, p. 792).
The factor’s promise to pay the major portion of the purchase price “ at the time of purchase ” and the balance within a matter of days after collection was tantamount to a promise to pay in cash, a promise which could not be performed by the promisor’s unilateral action in offering as payment for the sale the seller’s own debts which the purchaser had acquired (Hughes v. Daniells, 87 Misc. 190). The petitioner has not shown, nor does it attempt to show, that Tiffany agreed to accept payment from .Ambassador by the tender of Tiffany’s third-party debts. See Benham v. Columbia Canal Co. (74 Wash. 110, 118) where the court, in defining a setoff, described it as a “ ‘ distinct demand, the subject of a cross-action, not a payment ’; that ‘ what was in its origin a set-off may by agreement become a payment ’ ”.
Since the court finds that the petitioner has not shown that Ambassador had the right, under the contract or otherwise, to deduct Tiffany’s third-party debts from Tiffany’s account, the court need not determine Ambassador’s claim of ownership to the September accounts receivable. The court finds that there was due Tiffany under the contract approximately $29,000. An advance of $20,000 which Ambassador subsequently made to Tiffany, also pursuant to the terms of the factoring agreement, must necessarily have been made from the $29,000 and not as a separate advance in consideration of a promise to forward the September accounts receivable.
It is the decision of this court that the factor’s obligation to pay Tiffany under the contract was not satisfied by Ambassador’s entry on its records of a credit allowance to Tiffany upon Tiffany’s third-party indebtedness. See Faylor v. Brice (7 Ind. App. 551), where a lessee’s unilateral action, without the lessor’s consent, in crediting the amount payable as rent upon *102 the lessor’s promissory note, held by and payable to the lessee, was held not to be compensation for the lessor’s demand for payment of rent.
As to the assignee’s motion for a turnover order ag’ainst Ambassador pertaining to the balance remaining in Ambassador’s hands, no further facts have been asserted in support of the application other than the facts already recited herein. On the other hand, Ambassador has asserted its cross claim, which was in existence at the time Tiffany assigned for the benefit of creditors, as a setoff against the assignee’s claim. It it conceded that Tiffany’s action in assigning for the benefit of creditors terminated the factor’s contract. Under such circumstances, the court may not deprive Ambassador of the right to assert its claim as a setoff against the assignor’s claim. Motion and cross motion denied. Settle orders on notice.