## Louis Turner, Respondent, *vs.* A. A. Mellier, Appellant.

1. *Contract for manufacture and sale of patent medicine—Construction of—Covenants going only to part of the consideration—Mutuality of covenants—Counter-claim.*—A contract between A. & B. for making and vending a patent medicine,.contained, among others, the following separate stipulations ; 1st. A. was to buy all material, for the manufacture, from B. if sold at cheapest rates: 2d. A. was to turn over to B. all orders for the specific : 3d. B. in the purchase of the bottled medicine was to pay half the amount agreed on in cash, remainder in articles used in the manufacture ; and he agreed to keep enough bottles on hand to supply the market: 4th. All settlements between the parties were to be made January 1st and July 1st. In suit by A. for money and material claimed to be due under stipulation No 3, for bottles purchased by B., *held*, 1st. that under the agreement, B. could not be compelled to pay for bottles bought by him till the date—of those above named—next succeeding the purchase : 2nd. that defendant could not defeat plaintiffs entire claim by showing failure on his part to turn over to defendant each and every order on him for bottles as provided by stipulation 2. That covenant went only to a part of the consideration, and covenant 3 was not dependent upon it. But defendant might recover by way of counter-claim for any losses occasioned to him by plaintiff's failure to turn over orders, which losses were in excess of the sum due plaintiff.

2. *Contract—Reciprocal obligation—Performance of what by plaintiff necessary to entitle him to recover of defendant.*—Where a contract contains various mutual stipulations, neither can recover for the breach of a covenant in his favor without proving the performance of all acts, on his part, which by the contract are conditions precedent to the obligation of defendant, and without showing his readiness to perform those, if any, which were to be performed concurrently with the act to be done by defendant.

3. *Contracts—Covenants when independent—Suit upon covenant affecting only part of the consideration.*—Generally where covenants on the part of the different parties to a contract are to be performed at different times, they will be considered to be independent and a breach of one can be sued for without alleging the performance of the other ; and where a covenant goes only to a part of the consideration, and a breach of the same may be paid for in damages, it is construed as an independent one. The question whether covenants are dependent or independent is in general to be determined by the intention of the parties.

### *Appeal from St. Louis Circuit Court.*

*M. Kinealy,* for Appellant.

The covenants of the seventh clause are independent both of the covenants of the fourth and fifth ; and the breach of the seventh could be compensated for in damages, and in no way embarrassed plaintiff in fulfilling the conditions of the

fourth or fifth clauses. (Mill-dam Foundry vs. Hovey, 21 Pick., 417; Payne vs. Bettisworth, 2 A. K. Marsh., 427; Morrison vs. Galloway, 2 Harris & J., 461; Todd vs. Summers, 2 Gratt., 167; Bennett vs. Pixley, 7 Johns., 249; Keenan vs. Brown, 21 Vt., 86; Butler vs. Manny, 52 Mo., 506; Fothergill vs. Walton, 2 Moore, 630; 2 Pars. Cont., 527.)

*Lee & Adams*, for Respondent.

VORIES, Judge, delivered the opinion of the court.

This action was founded upon a written agreement executed by plaintiff and defendant on the 15th day of March, 1871, which was to the following effect:

"First, the said Louis Turner, for certain considerations after named, doth hereby appoint and constitute A. A. Mellier his only wholesale and general agent for the sale of his proprietary medicines known as "Turner's Specific Wonder and Turner's Liver and Blood Pills.""

"Second, the party of the first part shall advertise the said A. A. Mellier as his only agent, in his circulars, on his traveling wagons and in all advertisements wherein said medicines are brought before the public."

"Third, the party of the first part shall not himself sell or permit his agents, while traveling, to sell to any dealer or other parties more than six dozen of the so called "Turner's Wonder" or Pills, in any one town they may visit, but shall refer all dealers beyond the quantities above named, for their supplies, to the party of the second part."

"Fourth, it is further agreed, that the said Louis Turner will turn over all orders that may be received by him at his office in the city of St. Louis or from any other quarter, for any of his medicines, to be filled by the party of the second part."

"Fifth, the party of the first part agrees, also, to buy all the crude materials, used in the manufacture of his medicines, from the party of the second part; *Provided*, all such articles shall be sold to him as cheap as can be bought elsewhere."

"Sixth, in consideration whereof, the said A. A. Mellier

doth bind himself to take of the party of the first part, by the 15th day of May, 1871, thirty gross of Turner's "Specific Wonder," "large," for which he is to pay two thousand dollars, all of which is to be invested in wagons, horses, harness, and other appurtenances thereunto belonging, said teams, etc., to be used for the sole purpose of advertising and furthering the sale of said medicines."

"Seventh, it is also agreed that all future purchases of Turner's medicines by the party of the second part shall be as follows: Large size 'Wonder' at the rate of six dollars per dozen ; small 'Wonder' and Pills at three dollars per dozen each, to be paid for as follows, viz: one half cash, balance in such articles as can be used in the manufacture of the 'Wonder' and Pills. The party of the second part is not to be considered bound to take any given quantity, but it shall be left to his discretion to make it either more or less, as circumstances may warrant. He however pledges himself to the party of the first part to keep an ample supply of said medicines on hand sufficient to supply all demands."

"Eighth, it is also agreed that all settlements of the parties to this contract shall be made the first day of July and January of each year."

"Ninth, this contract to go into effect from date, and remain in full force until July 1st, 1872."

The plaintiff, after stating in his petition that he had at all times fully performed all of the provisions of the said contract, on his part to be performed, avers as a breach of the contract on the part of the defendant, substantially the following : That by virtue of the provisions of the seventh clause of said contract the plaintiff furnished to the defendant, at sundry times, the medicines referred to in said seventh clause amounting in the aggregate to $2047.77 ; that on or about the 17th January, 1872, plaintiff made frequent demands upon defendant for articles used in the manufacture of said medicines, and that he also demanded money of said defendant in payment for the medicines so received by him under said contract, but that defendant refused to pay plaintiff for said medi-

cines, either in materials, etc., or in money, the balance due plaintiff.

The petition alleges that there were, at said time, two hundred and fifty-five dollars due plaintiff for said medicines thus delivered after allowing defendant for all payments or credits thereon, and for which judgment was prayed, etc.

The defendant denied that plaintiff had performed the provisions of the contract on his part, and also denied the breach of the contract charged against said defendant by the plaintiff.

The defendant then set up by way of counter-claim to the plaintiff's action that he had performed the contract on his part, but that plaintiff had failed to perform the provisions of the contract on his part, to be performed, in this ; that contrary to the provisions of the fourth clause and article of said contract, plaintiff during the existence of said contract, and prior to the first day of January, 1872, failed and refused to turn over orders received by him, at his office in St. Louis and from other quarters, for his medicines, to be filled by defendant, but that plaintiff had himself filled said orders and sold said medicines to the amount of seven thousand dollars, upon which the profits to defendant would have been one thousand dollars ; for which defendant prays judgment. The defendant also set up a similar breach on the part of plaintiff to the third clause of said contract, for which damages were claimed in the sum of six hundred dollars; for which judgment was also claimed. Issues were made on defendant's answer.

The evidence in the case tends to prove the issues on the part of each of the respective parties.

The court instructed the jury on the part of the plaintiff as follows :

1. "If the jury find for the plaintiff they will assess his damages to be such sum as they shall find is due plaintiff after deducting the payments made by defendant, either in cash or in materials, from the whole amount due plaintiff for medicines furnished defendant at the price named in said contract."

34—VOL. LIX.

2. "If the jury believe from the evidence that, on or about the 18th day of January, 1872, the plaintiff had delivered to the defendant the medicines mentioned in said contract, and that plaintiff had not been fully paid therefor; that plaintiff demanded of the defendant certain materials used in the manufacture of said medicines; and that he also demanded money of defendant; that defendant refused to furnish plaintiff with all of said materials or with money, then the jury will find for the plaintiff, unless they shall believe from the evidence that plaintiff was guilty of some substantial breach of said contract on his part."

3. "The jury are instructed, that by the terms of the contract between plaintiff and defendant, the plaintiff was not bound to purchase the materials, entering into the composition of his medicines, of defendant, unless he could buy them as cheap as he could buy elsewhere, and if the jury believe from the evidence that the plaintiff could purchase the materials entering into the composition of pills cheaper from Werrell, then he had the right to purchase same from him."

These instructions were severally objected to by defendant, and his objections being overruled he excepted.

The court then, at the instance of the defendant, instructed the jury as follows:

1. "The court instructs the jury that, if defendant supplied plaintiff on his demand with the materials used in the manufacture of said 'Wonder' in the proportions in which said materials entered into the composition of said 'Wonder', and was ready and offered to supply all of said materials, which he agreed to supply, in said proportions, then defendant has complied with the requirements of the 7th clause of said contract."

4. "Unless the jury believe from the evidence under the instructions of the court that defendant has not complied with the requirements of his contract under the seventh clause of said contract, plaintiff cannot recover in this action."

The defendant also asked the court to give the jury the following instructions, to-wit:

Turner v. Mellier.

2. "If the jury believe from the evidence that plaintiff after the date of said contract, and prior to July 1st, 1872, proceeded to fill orders for or to sell or dispose of any of said medicines to any person other than defendant, without the knowledge and consent of defendant, and did not turn over such orders or sales to defendant, then defendant is entitled to recover what from the evidence appears a fair reasonable profit on the amount of goods so sold or disposed of by plaintiff, not exceeding one thousand dollars, deducting what plaintiff may recover for medicines furnished, if any."

3. "If the jury believe from the evidence that plaintiff, after the date of said contract and prior to July 1st, 1872, failed or refused to purchase crude materials, used by him in the manufacture of his medicines, from defendant, which he could have bought from defendant as cheaply as elsewhere, defendant is entitled to recover as damages for said failure such amount not exceeding $750, as the jury may believe from the evidence was the fair reasonable profit on the said materials used by plaintiff between said times."

The court refused to give the jury the two last named instructions as asked for by the defendant, but added to each of said instructions the following: " Provided, the defendant was ready and willing to comply with his part of the contract," and then gave the said instructions to the jury as so amended. To this action of the court the defendant at the the time excepted.

The jury then returned a verdict for the plaintiff for the sum of two hundred and fifty dollars, for which judgment was rendered.

The defendant, in proper time, filed a motion for a new trial, on the ground that the court had erred in giving and refusing instructions, and that the verdict was not supported by the evidence.

This motion being overruled, the defendant appealed to the general term of said court, where the judgment rendered at special term was affirmed, and the defendant appealed to this court.

It is insisted by the defendant that the court erred in giving the jury the second instruction asked for by the plaintiff, and also erred in refusing the second and third instructions asked for by the defendant; and also erred in giving said last named instructions in an amended form.

In order that we may be able to see whether the second instruction given on the part of the plaintiff is a correct presentation of the law as applicable to the pleadings and facts in this case, it will be necessary to examine into the provisions of the contract upon which the action is brought as well as the pleadings and evidence in the case. The contract was entered into on the 15th day of March, 1871, and the ninth clause provides that it shall go into effect from date, and continue in full force until July 1st, 1872. The first clause provides that the plaintiff for considerations to be after named, constitutes defendant his sole or only general agent for the whole sale of his proprietary medicines therein named.

By the second clause the plaintiff agrees to advertise defendant as his only agent in all of his circulars and other modes of advertising his medicines.

By the third clause plaintiff binds himself and traveling agents not to sell to any dealers or other parties more than six dozen of the bottles of pills named in any one town they may visit, but such dealers are to be referred to defendant for their supplies. The plaintiff by the fourth clause binds himself to turn over all orders that may be received by him from any quarter, at his office in St. Louis, for any of his medicines to the defendant, to be filled by him.

By the fifth clause, plaintiff agrees to buy all of the crude material entering into the composition of his medicines from defendant, provided he can purchase of defendant as cheaply as of others.

The sixth clause provides that in consideration of the matters and things mentioned in the previous clauses the defendant binds himself to purchase by the 15th of May, 1871, thirty gross of plaintiff's medicines, and to pay therefor two thousand dollars, which sum is to be invested in horses, wagons,

etc., to be used for the purpose of advertising and furthering the sale of plaintiff's medicines.

The seventh clause, for the breach of which this action is brought, provides that all future purchases of plaintiff's medicines by the defendant, shall be paid for at prices therein stated, one half cash and the remainder in such articles as can be used in the manufacture of the medicine ; and the defendant agrees to purchase in sufficient quantities to keep a supply on hand to satisfy the demand for the same.

The eighth clause stipulates that " all settlements of the parties to this contract shall be made the first day of July and January of each year."

The plaintiff's petition first states that the provisions of the sixth clause had been performed by both parties, and that plaintiff had performed all the conditions and provisions of the contract on his part to be performed ; and that under the provisions of the seventh clause of said contract, he had furnished to the defendant at various times medicines, amounting in the aggregate to the sum of $2,047 $\frac{77}{100}$, as will appear by the exhibit filed ; and that on or about the 17th day of January, 1872, he made a demand upon defendant for money and for materials used, etc., and that defendant refused to pay plaintiff either the cash or materials demanded. And it is further charged that at the time of said demand there was a balance due on the medicines furnished of $255 $\frac{22}{200}$, for which judgment was asked.

To this the defendant, after denying his indebtedness to plaintiff, pleaded several breaches of the contract by plaintiff as hereinbefore set forth, by which he charges that he is damaged and which he pleads as a counter-claim to plaintiff's action. The evidence is not set forth in full but it is not denied that the evidence on each side tended to prove the facts relied on by them respectively. The evidence of the plaintiff, however, does not show, or tend to show, at what time the medicines were delivered to defendant, for which the $255 was due, for which suit was brought. It is not shown whether said medicines were delivered before or after

the 1st of January, 1872, and the bill of particulars referred to in the petition is not set out in the evidence.

It seems to me, that when we take into consideration the fact, that by the fifth clause of the contract, the plaintiff agrees to buy all of the crude material used in the manufacture of his medicines from the defendant, if they could be purchased as cheaply of him as elsewhere, and that by the seventh clause the plaintiff agrees to take at least one half of the price of the medicines furnished to defendant in said materials, and the defendant agrees to keep a sufficient supply on hand to supply the demand therefor; and when in connection with these provisions of the contract we consider the further fact that by the eighth clause it is "agreed that all settlements of the parties to this contract shall be made the first day of July and January of each year," the proper construction of the contract is, that the plaintiff might purchase as much crude material of the defendant as he saw fit, binding himself, however, to take half of the value of the medicines purchased by defendant in such materials, and that defendant could purchase of plaintiffs medicines at least in quantities sufficient to supply the demand, but that neither should be required to settle and pay for such purchases, until the first day of July or January after said purchases, whichever one of said periods arrived first. In other words, that if either of the parties should make a purchase as contemplated in the contract, after the first of January, 1872, he could not be required under the contract to settle or pay for the same until the first day of July, 1872. In this case neither the pleadings nor evidence before us show at what time the medicines for which this suit was brought were delivered to or purchased by the defendant.

The second instruction given for the plaintiff tells the jury that "if they believe from the evidence, that on or about the 18th day of January, 1872, the plaintiff had delivered to the defendant the medicines mentioned in said contract, etc., and that plaintiff had not been fully paid," etc.

This instruction assumes, that if medicines had been delivered to the defendant on the 17th of January, pay for the

same might be demanded on the 18th, and suit brought if the pay was refused, and a recovery had. We think this is not a proper construction of the contract. It is not shown by the evidence what amount of money was demanded, or the value of the materials which were demanded. It is conceded that half of the price of all medicines delivered to the defendant had been paid for in money. It should have been shown that the value of the materials demanded was not greater than the sum due plaintiff.

The instruction assumes that if materials were demanded (regardless of their value) and refused by the defendant, the plaintiff may recover the value of the goods sold. This is certainly erroneous. It would seem from the action of the court in refusing the second and third instructions as asked for by the defendant, and in giving the same with the amendments thereto as heretofore stated, that the court construed the clauses of the contract for the breach of which defendant claimed damages by way of counter-claim, to be dependent mutual covenants or agreements, and that no action could be brought on them without alleging and proving a performance of or a readiness to perform all of the agreements on the part of the defendant to be performed.

It is true that where a contract contains various stipulations, some on the part of one, and some on the part of the other of the contracting parties, neither can recover for a breach of a covenant in his favor, without alleging and proving the performance of all acts on his part, which by the contract are conditions precedent to the obligation of the defendant, upon which suit is brought, and his readiness to perform those, if any, which were to be performed concurrently with the act to be performed by the defendant. (Denny vs. Kile, 16 Mo.,450.)

The question is, were the covenants or agreements relied on by the defendant, dependent or independent covenants? The general rule is, that where covenants on the part of the different parties are to be performed at different times, they will be considered to be independent covenants, and a breach

of one can be sued for without alleging or proving the performance of the other. Another rule is, that where the covenant goes only to part of the consideration of both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and consequently an action may be maintained for a breach of such covenant on the part of the defendant without averring performance of other covenants on the part of the plaintiff. (Pordage vs. Cole, 1 Saunders, 319; also note to same, p. 320, and authorities cited; Smith vs. Busby, 15 Mo., 387; Lucas vs. Clemens, 7 Mo., 367; 2 Pars. Cont., 527; Bennett vs. Ex'rs of Pixley, 7 Johns. 249; Keenan vs. Brown, 21 Verm., 186; 2 A. K. Marsh., 427.) The dependence or independence of covenants is generally to be construed according to the intention of the parties. (Freeland vs. Mitchell, 8 Mo., 487.).

Now, to test the present case by the rules before stated, was the covenant of the plaintiff to turn over all orders received by him for his medicines to the defendant to be filled, dependent upon the defendant's having performed the entire contract on his part, or did the covenant on the part of the plaintiff, go to the whole consideration of the contract on both sides? It certainly was not dependent upon other covenants in the contract, and only went to a part of the consideration. Suppose that between the time the contract first took effect and the first day of July following the time for making the first settlement, the defendant should have purchased two thousand dollars' worth of medicines for which he had not paid plaintiff, and plaintiff had, during the same time, sold a bill of medicines ordered from him, without turning the same over to defendant, by which defendant was damaged in the sum of one dollar; and defendant refused to either settle or pay for the medicines received. Would it be pretended that the obligation of the defendant to pay for the medicines purchased was dependent upon the covenant of the plaintiff to turn over all orders for medicines to defendant; and could the defendant set up this breach of the agreement on the part of the plaintiff, and thus bar the plaintiff's

right of recovery? This certainly could not be done, for the simple reason that the two covenants or obligations are independent, each going to only a part of the consideration of the whole contract, the breach of which could be estimated in damages. It follows, that the defendant had a right to recover on his counter-claim, if the evidence sustained the allegations of the answer.

For the reason that it appears that the case was tried and decided on a wrong theory, and an improper construction of the contract sued on, the judgment is reversed and the cause remanded to the St. Louis Circuit Court at special term; the other judges concur.