[No. 7408.   Decided February 1, 1909.]

FRANK L. CRAMPTON et al., Appellants, v. McLAUGHLIN
REALTY COMPANY et al., Respondents.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE — COVENANTS—
MUTUALITY—BREACH—REMEDY. Covenants in a contract for the sale
of land relating to building restrictions and the making of street
improvements by the grantors, are independent of the covenants to
convey and pay the purchase price; and the grantee's remedy for a
breach is an action for damages, and not rescission, where perform-
ance, and the time therefor, on one side was quite independent of
performance on the other, and a breach goes only to part of the
consideration and can be compensated in damages.

Appeal from a judgment of the superior court for King
county, Morris, J., entered January 28, 1908, in favor of
the defendants, upon their motion for judgment on the plead-
ings.   Affirmed.

*Million & Houser*, for appellants.

*R. F. Booth* and *Peters & Powell*, for respondents.

RUDKIN, C. J.—On the 22d day of October, 1906, the
plaintiffs and the defendants entered into a contract whereby
the defendants agreed to convey to the plaintiffs certain real
property therein described, upon the payment of the sum of
$2,400, which the plaintiffs agreed to pay as follows: $400
on execution of contract, $200 on January 22, 1907, $200
on April 22, 1907, $200 on July 22, 1907, $200 on October
22, 1907, $200 on January 22, 1908, $200 on April ·22,
1908, $200 on July 22, 1908, and $600 on October 22, 1908,
with interest on deferred payments· at the· rate of six per
cent per annum.   It was further agreed that the purchasers
should pay all taxes and assessments levied or assessed against
the property, and that the contract should be forfeited at the
election of the vendors for failure to make any payment when
due.   In addition to the usual covenants to convey and to pay

[1]Reported in 99 Pac. 586.

the purchase price, the contract contained the following cove-
nants on the part of the vendors and purchasers:

"This sale is made subject to the following building restric-
tions: Nothing but a single detached residence, and the
necessary outhouses, costing not less than Three Thousand
Dollars ($3,000) shall be built on any one lot described in
this contract; subject also to the vendors rights to establish
grades of streets, alleys, and sidewalks and to grade the sur-
face of the lots to conform to said grades, when desirable;
to make any alterations in the plat before the same is filed;
for a period of six months from the date hereof to remove any
and all brush, stumps or trees from said lot deemed by them
to be necessary for the safety or benefit of these premises.
No old buildings shall be moved thereon. No building shall
be set nearer the street or shore line of said lot than the
building line established on the plat. The grantee herein
agrees not to erect or to suffer to be erected or maintained
on said premises any flat, apartment, store, business or manu-
facturing building or to allow any building erected thereon
in whole or in part, to be used for business or manufacturing
purposes.

"It is further agreed that the purchasers of water front
lots shall not use the water front thereof for any commercial
purposes nor shall they drive any pile or piles, or construct
wharves or docks in front thereof, except as may be necessary
for one launch house and approaches thereto, the same to be
attractively built and painted and to be used for the private
use of the owner of these premises. Said first parties also
reserve the right to traverse the said premises, should it be-
come necessary, with water mains or sewers.

"In the event that the state of Washington shall offer for
sale the shore lands lying in front of the property described
herein before the title passes to the purchaser herein named,
the parties of the first part shall have the right to purchase
said lands from said state of Washington and upon the
passing of title to said lot, said first parties shall quitclaim
to said second party said shore lands so purchased, upon
the payment to them of the amount actually paid said state
with interest at seven per cent per annum.

"Said first parties agree that they will, free of cost to said
second party, put in the necessary cement sidewalks, sewer

and water mains and pave the abutting street, within one year from the date hereof."

The plaintiffs made the initial payment of $400 at the execution of the contract, and paid the installments of $200 each, falling due on the 22d day of January, 1907, the 22d day of April, 1907, and the 22d day of July, 1907, respectively. On the 23d day of October, 1907, the plaintiffs elected to rescind the contract for failure on the part of the defendants to put in the cement sidewalks, sewer and water mains, and pave the abutting streets within one year from the date of the contract, as agreed, and so notified the defendants. This action was thereafter instituted to recover the $1,000 paid under the contract, with legal interest from the dates of the several payments. The complaint alleged the execution of the contract, the payment of the installment due July 22, 1907, and all prior installments, that the plaintiffs had in all respects fully complied with the terms of the contract on their part, the failure of the defendants to put in the cement sidewalks, sewer and water mains, or pave the abutting streets within the year, the election of the plaintiffs to declare a forfeiture, and prayed judgment in the sum of $1,000, with interest and the cost of suit.

The answer set forth the contract *in haec verba* and admitted that the defendants "Had not completely paved the abutting street on the 22d day of October, 1907, but as a matter of fact that they had put in sidewalks, water mains, gutters and curbs, and had laid the foundation for the paving of the street, and had completed seventy-five per cent in cost and in value of the improvements so to be put in, and have now completed the sewer system, and have completed the entire improvements as speedily as possible." Upon the issues thus presented, both parties moved for judgment on the pleadings. The motion of the plaintiffs was denied, and that of the defendants granted, and from the judgment thus given the plaintiffs have appealed.

The respondents contend that the appellants were in default for failure to pay or tender the installment due October 22, 1907, and that being in default they could not claim a forfeiture for a like default on the part of their vendors. The appellants, on the other hand, contend that the allegation that they had fully complied with all the terms and conditions of the contract on their part, showed that they were not in default, and that it was not incumbent upon them to pay or tender the installment due on October 22, 1907, because it appeared that it was without the power of the respondents to perform. Regardless of the merits of these respective contentions, we think there are other reasons why the judgment should be affirmed. The numerous covenants contained in this contract, aside from the covenant to convey and the covenant to pay the purchase price, are wholly independent of each other, and the only remedy for a breach of such covenants is an action for damages. It is sometimes difficult to determine whether covenants are dependent or independent, but we think the covenants contained in this contract in relation to building restrictions, improvements, etc., are clearly of the latter class.

"If there is no connection in the matter of the promises, and the performance on the one side is quite independent of the performance on the other, the promises are in general independent and not conditional. Where, by the terms of the contract, the time to perform the covenant on the one side is to arrive, or may arrive, before the time for the performance of the covenant on the other side, the former is not dependent on the latter." 9 Cyc. 642.

In *Hunt v. Tibbetts,* 70 Me. 221, the court said:

"It is obvious that two of the matters which courts have been wont to deem important in determining whether the stipulations of parties are independent, or whether performance by one party is a condition precedent to the maintenance of his action for a breach on the part of the other, to wit: the order of time in which performance is to take place, and the fact that on each side the promises go only to a part of the

consideration and a breach may be compensated in damages or the injured party otherwise have a perfect remedy, concur in the present case to incline us to regard their mutual promises as independent, and to hold that each party should have his proper remedy for a breach by the other."

In *Turner v. Mellier*, 59 Mo. 526, the court said:

"The general rule is, that where covenants on the part of the different parties are to be performed at different times, 'they will be considered to be independent covenants, and a breach of one can be sued for without alleging or proving the performance of the other. Another rule is, that where the covenant goes only to a part of the consideration of both sides, and a breach of such covenant may be paid for in damages, it is an independent covenant, and consequently an action may be maintained for a breach of such covenant on the part of the defendant without averring performance of other covenants on the part of the plaintiff."

So in this case, the covenant to make improvements goes only to a part of the consideration, and the fact that the date for completing the improvements and the date of payment of one of the installments of the purchase price fell on the same day was a mere coincidence. In *American Emigrant Co. v. County of Adams*, 100 U. S. 61, 25 L. Ed. 563, the Emigrant Company purchased certain lands from the county and agreed, as a part of the consideration, to drain the lands and bring in settlers. In an action to rescind the contract for breach of this and other covenants, the court said:

"The allegations of the bill to the effect that the Emigrant Company has not fulfilled its engagements with respect to the drainage and settlement of the land, rest in covenant merely, and afford no ground for avoiding the contract. Where covenants are mutual and dependent, the failure of one party to perform absolves the other and authorizes him to rescind the contract. But here the contract was largely carried into execution soon after its inception. The engagements of the appellants to introduce settlers and the like were to be performed in the future; and their performance was

not a condition, but, as before stated, rested in covenant. In case of a breach, they would lay the foundation of an action, but nothing more."

See, also, *Tipton v. Feitner*, 20 N. Y. 423; *Front Street etc. R. Co. v. Butler*, 50 Cal. 574. For these reasons we are of opinion that the remedy of the appellants for the breach of the covenant to make improvements was to offset their damages in an action for the purchase price, or prosecute an independent action for the breach of the covenant, and that the breach of such a covenant, of itself, affords no adequate ground for rescission.

The judgment is therefore affirmed.

DUNBAR, CROW, and MOUNT, JJ., concur.

FULLERTON, CHADWICK, and GOSE, JJ., took no part.