Argued June 23, reversed July 7, rehearing denied September 8, 1914.

# MILLER *v.* BECK.

### (142 Pac. 603.)

**Vendor and Purchaser—Rights as to Third Persons—Former Purchaser —Estoppel.**

1. Where defendant accepted a deed of land which the seller had previously contracted to sell to plaintiff, and notified plaintiff of his ownership of the land, and demanded and received payment of an installment of the purchase price under the contract, it became defendant's duty to perform the seller's contract respecting the land, and defendant should be estopped from denying such contract.

> [As to notice before payment which defeats claim of bona fide purchaser, see note in 12 Am. Dec. 212.]

**Frauds, Statute of—Promise to Answer for Default of Another.**

2. By accepting the deed from the grantor to the grantee the latter agreed to perform the conditions of the contract with a purchaser of the land, and the same is not, as between the grantee and the purchaser, obnoxious to the statute of frauds as being an agreement to answer for the debt or defaults of the grantor.

> [As to what is a contract, within the meaning of the statute of frauds, to answer for or pay the debt of another, see note in 126 Am. St. Rep. 487.]

**Vendor and Purchaser—Performance by Purchaser—Payment of Price —Failure to Rescind.**

3. Though a contract for the sale of land provides for forfeiture in case of delay in payment by the purchaser, an acceptance of the money after it was due without objection keeps the contract alive for failure to rescind.

**Vendor and Purchaser—Rescission of Contract—Damages—Grounds.**

4. Under a contract to sell two lots with a right of way over another lot till a road should be opened in front of the lots sold, the purchaser was entitled to rescind the contract on the closing of the right of way and the refusal of the vendor to open a road in front of the lots and to sue for damages for the breach of contract.

> [As to false statements by vendor of intention to make improvements affecting property sold as fraud sufficient to avoid contract of sale, see note in Ann. Cas. 1914B, 862.]

**Vendor and Purchaser—Remedies of Purchaser—Recovery of Payments—Conditions Precedent.**

5. Under a contract to sell lots with a right of way till a road should be opened in front of the lots, the demand for the right of way on its being closed or for the road, the refusal of the vendor to provide it, and the subsequent demand for return of payments constituted a rescission of the contract by the purchaser and entitled him to maintain an action to recover the payments made without the tender of

payments accruing between the rescission and the commencement of the action.

**Evidence—Motion for Nonsuit—Question for the Jury.**

6. The testimony and admitted facts in regard to the right of way for a road, and the failure of defendant to open or provide one as agreed, were sufficient to go to the jury on that question, and it was error to sustain the motion for nonsuit.

From Marion: PERCY R. KELLY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

On December 20, 1910, the Hubbard Investment Company entered into a written contract with W. F. Miller, the plaintiff here, whereby it agreed to sell to him, and he agreed to buy from the company, realty in Marion County owned by it and described thus:

"All of tracts numbered twenty-four (24) and twenty-five (25) of the Dimick Homestead Tracts, which said tracts are duly recorded in the office of the county recorder of said Marion County, Oregon; also a right of way for road purposes along tracts 32 and 33 of said Dimick Homestead Tracts, until such time as the twenty-foot road along the front of said tracts numbered 24 and 25 shall have been opened."

It is admitted that, at the time of the execution of the writing, the plaintiff paid to the company $450. The agreement provides that there shall be—

"three annual payments of $450 each, the first payment December 20, 1911, second payment December 20, 1912, third payment December 20, 1913. And if said sums either principal or interest shall not be paid on the dates specified then such sums shall bear interest from such dates at the rate of 6 per cent per annum; and further that the party of the second part (meaning Miller) shall make punctual payments of the above sums, as each respectively becomes due, and that the party of the second part shall regularly pay all taxes and assessments as they become due on said premises. In case the second party, legal repre-

sentatives or assigns shall pay the several sums of money aforesaid punctually, then and only then will the first party cause to be made and executed unto the second party, their heirs and assigns, upon the surrendering of this contract, a deed conveying said premises in fee simple. And it is hereby agreed and covenanted by the parties hereto that the time of the payments are the essence of this contract. And in case the said second party shall fail to make the payments aforesaid, without any failure or default, then this contract, so far as it may bind the first party, shall become utterly null and void, all rights and interests thereby created shall utterly cease and determine, and the right of possession and all equitable and legal rights in the premises hereby contracted shall revert and revest in said party, without any declaration of forfeiture or act of re-entry, or any other act by said first party to be performed. And the said party of the second part covenants and agrees to surrender unto said party of the first part the said land and appurtenances without delay or hindrance, and no court shall relieve the party of the second part from failure to comply strictly and literally with this contract. * * ''

After alleging the corporate character and existence of the Hubbard Investment Company, its ownership of lots 32 and 33 above mentioned, and the making of the contract already noticed, the complaint states in substance that the company put the plaintiff into possession of the premises and right of way, and that he remained thus holding it until the passage over lots 32 and 33 was closed up; that about March 11, 1911, the company conveyed to the defendants lots 24 and 25 already contracted to the plaintiff upon the stipulation between the company and the defendant that the latter should assume and carry out all the terms of the previous covenant made between the company and the plaintiff; that the company thereupon duly

assigned, transferred and delivered the contract to the defendant with its deed, and as a part of the bargain between them allowed the defendant all the sums paid by the plaintiff to it on account of the purchase price of the premises. Further averment of the plaintiff is to the effect that immediately thereafter the defendant notified plaintiff that he had purchased lots 24 and 25 and plaintiff's contract with the corporation, and that he would thereafter collect the installments due thereon and carry out the contract between the plaintiff and the company, to which plaintiff duly assented. The defendant admits notifying the plaintiff that he was the owner of the premises in question, and that all subsequent payments on the contract were to be made to him, but does not admit that he agreed to carry out the contract. The plaintiff further alleges and the defendant admits that:

"On the 21st of December, 1911, said plaintiff paid to said defendant the sum of $250 on said contract, the amount due at that time thereon, and the same was received by said defendant and duly credited on said contract. * * That thereafter, on April 20, 1912, plaintiff paid to the defendant on said contract the further sum of $286.62; the same being the amount of the installment, principal and interest due thereon at that time, which was received by said defendant as a payment on said contract and duly credited the same thereon. * * That thereafter plaintiff further paid the taxes on said premises for the year 1911, amounting to the sum of $11.52."

In addition to this the complaint avers that, after entering into the contract for the sale of the premises, the company conveyed lots 32 and 33 to other parties, who closed up the passage across those tracts and stopped plaintiff from the use thereof; that no one opened the 20-foot roadway in front of lots 24 and 25,

and the plaintiff is entirely cut off from any access to those premises; that he notified the defendant of the closure of the way over lots 32 and 33, and demanded of him that he protect that passage or open the road in front of the premises which were the subject of the contract for purchase. Continuing, the complaint asserts that the defendant refused to protect the one way or to open the other, in consequence of which plaintiff demanded repayment of all sums of money paid on the contract, as well as the taxes mentioned, but that the defendant refuses to repay any of the money. By reason of the alleged violation of the contract by the defendant, the plaintiff claims to be damaged in the amount of the payments and demands judgment for them. The answer admits the conveyance from the company, which contains this condition:

"This conveyance is made subject to a certain contract of sale and the terms thereof dated December 20, 1910, between the grantors herein and W. F. Miller."

Apart from this and the other admissions already noted, the answer denies the complaint *in toto.* For affirmative matter the answer alleges in substance the conveyance from the investment company to the defendant, with the words already mentioned, and states that in June, 1912, the plaintiff informed the defendant of the closure of the way over lots 32 and 33, whereupon they agreed that the plaintiff would open the roadway in front of lots 24 and 25 and remove brush therefrom if the defendant would furnish lumber and timber necessary to build culverts across the ditches on that roadway; that the defendant agreed thereto and furnished the material for the culverts; that the plaintiff himself opened the roadway in front

of the lots in question; and that the same has been open ever since. The new matter in the answer was denied by the reply, and in that pleading the plaintiff further alleged, as an estoppel against the defendant, his representations to the plaintiff about the contract and his collection from the plaintiff of the payments already mentioned. At a jury trial the defendant moved for nonsuit on the grounds:

"First. That there has been no agreement shown between the Hubbard Investment Company and the defendant herein, whereby the defendant Geo. N. Beck assumed the obligations of the Hubbard Investment Company with reference to this contract.

"Second. That there is no allegation in the complaint, and there is no proof offered, of a tender of the purchase price under this contract before the bringing of the action.

"Third. The testimony shows that the plaintiff had not complied with his portion of the contract prior to the commencement of this action.

"Fourth. There is nothing in the testimony to show that the defendant has failed to do all of the things which were required even of the Hubbard Investment Company under the contract.

"Fifth. Neither have they proven any such facts as would stop the defendant from denying the relationship, which is incumbent upon them to prove in order to hold him under this contract.

"Sixth. For the further reason that there has been no eviction shown, and under the terms of the contract plaintiff was not entitled to the possession of the premises until he tendered the purchase price and had a deed."

The court sustained the motion for nonsuit for the reason that there is no allegation in the complaint specifying that the payment due in December, 1912, was tendered, and because the money was not brought

into court. From the consequent judgment of nonsuit, the plaintiff has appealed.

REVERSED.   REHEARING DENIED.

For appellant there was a brief with oral arguments by *Mr. Hiram Overton* and *Mr. Frank Holmes.*

For respondent there was a brief and an oral argument by *Mr. Walter C. Winslow.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The lots were sold as noted in the contract with reference to a recorded plat of the tracts mentioned, a copy of which was introduced in evidence without objection. Delineated on this plat is a roadway along the east boundary of the premises which the plaintiff agreed to purchase. The west line of lot 25 is common with the east boundary of lot 33, immediately north of which is lot 32, bordering upon another roadway outlined upon the map.

1. In our judgment, when the defendant accepted from the company the deed with the condition already noted, notified the plaintiff of his ownership of the land, and demanded and received payment of the installment on the purchase price, the legal effect of the transaction was to cast upon the defendant the duty of performing the contract respecting the land. By the transaction there was created between the plaintiff and the defendant a *quasi* privity of both estate and contract. At least the defendant is estopped to deny that conclusion, which is tantamount to proof of such an engagement made by the defendant.

2. As between the parties to this action, that result is not obnoxious to the statute of frauds. The defend-

ant did not agree with the plaintiff to answer for the debt or default of the company, but he did agree with the corporation to perform its contract with Miller. His duty in that behalf is embodied in the written deed which he accepted and in the contract to which the deed refers. This convention was for the benefit of Miller, and, under proper conditions, he can enforce such remedy as may be appropriate for the breach thereof by Beck: *Feldman* v. *McGuire,* 34 Or. 309 (55 Pac. 872); *Oregon Mill Co.* v. *Kirkpatrick,* 66 Or. 21 (133 Pac. 69).

3. The initial relation of the parties being thus determined, we proceed to consider the effect of the subsequent proceeding. It appears upon the face of the complaint that Miller was tardy in making payment of the installment due December 20, 1913. He himself declares that it was not until the next day that he paid anything upon that part of the purchase price, and then only $250, and that it was not until the subsequent April that he paid the remainder due the previous December 20th, with interest. Under the terms of the contract, if Beck had chosen to enforce it, he could have refused the payment made the day after it became due, and at once declared a forfeiture of the contract, leaving Miller without remedy; but he did not do this. He admits accepting payment of the money and interest after the same became due as stipulated. The mere failure to pay promptly did not necessarily work a rescission of the contract. The acceptance of the money after it was due without objection keeps the contract alive: *Higinbotham* v. *Frock,* 48 Or. 129 (83 Pac. 536, 120 Am. St. Rep. 796); *Davis* v. *Wilson,* 55 Or. 403 (106 Pac. 795); *Graham* v. *Merchant,* 43 Or. 294, 305 (72 Pac. 1088); *Frink* v. *Thomas,* 20 Or. 265 (25 Pac. 717, 12 L. R. A. 239). We conclude,

therefore, that the agreement was efficacious when the contention arose about the right of way.

4. Miller engaged to buy, and the company obligated itself to sell, not only the two lots, but also ''a right of way for road purposes along tracts 32 and 33 until * * such time as the twenty-foot road along the front of tracts numbered 24 and 25 shall have been opened.'' Construing this original contract, it is plain that the purchaser was not bound to open the road on the east side of the lots purchased. The writing bound the seller to a right of passage along the north line of 32 and 33 until the other road was opened. The logical deduction is that Beck, who, as we have seen, assumed the performance of this contract, must furnish one or the other right of way. His failure to do so on demand constituted a situation of which Miller had a right to avail himself as a breach of the contract by Beck and to use it as a basis of rescission on his part and of a consequent action to recover the money already paid. Up to that time the contract was unimpaired. Although Miller had been tardy in his payments, Beck had taken his money without insisting on time being the essence of the contract. The refusal of Beck to provide a right of way in one or the other direction constituted *pro tanto* a failure of the title because the alternative right of way was one of the things for which the contract of purchase was made. Miller, therefore, had a right to act upon this infraction, rescind the contract, and sue for damages resulting from the breach: *Armsby* v. *Grays Harbor Commercial Co.,* 62 Or. 173 (123 Pac. 32).

5. The demand for the right of way, Beck's refusal to provide the same, and the subsequent demand for return of payments constitute in legal effect such rescission of the contract by Miller. Under these

circumstances, it is not necessary for Miller to continue to perform the contract or to tender payments subsequently due as a condition precedent to maintaining this action. Having rightfully elected to rescind the contract, its provisions requiring performance became inert. A cause of action arose at once upon the rescission, and subsequent performance is not requisite.

6. The admitted facts and testimony about the closure of the right of way and the failure to open the one indicated on the map were sufficient to allow the plaintiff to go to the jury on that subject, and thus defeat the motion for nonsuit. Of course it would be competent for the defendant to show in his defense that a subsequent agreement was made and performed whereby the roadway delineated on the map was opened within the meaning of the contract, but that feature is not now before us. For the purposes of nonsuit, we can only consider the showing made by the plaintiff upon the pleadings and the testimony. The court was in error when it sustained the motion for nonsuit.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.        REVERSED.  REHEARING DENIED.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Ramsey concur.