Argued July 9, reversed and suit dismissed July 29, rehearing denied September 16, 1919.

## McCRACKEN v. BAY CITY LAND CO.*

### (183 Pac. 9.)

**Vendor and Purchaser—Tender—What Constitutes.**

1. Plaintiff's letter inquiring what balance remained to be paid on a land contract and expressing a desire to secure a deed as soon as possible, *held* insufficient to show a tender of amount due under the contract.

*On right of vendee to rescind executory contract for sale of land because of vendor's breach of covenant to make improvements, see notes in 21 L. R. A. (N. S.) 823; L. R. A. 1917B, 403.   Reporter.

Vendor and Purchaser—Rescission of Contract—Independent Cove-
nant.

2. A vendor's agreement to clear the lots, grade street, and lay a
water-main *held* an independent covenant not authorizing the pur-
chaser to rescind contract upon its breach.

From Tillamook: George R. Bagley, Judge.

Department 1.

This is a suit to rescind a contract for the purchase
of three lots in Central Addition to Bay City, the
vendee being plaintiff, and the vendor defendant.
The contract, which is set out in full in the complaint,
provides for monthly payments, and *inter alia,* con-
tains the following clause:

"The first party agrees to cut and grade the street
at the present level in front of the said lots, and to lay
a water main along the said street in front of the said
lots, and to clear the said lots. All of these improve-
ments to be delivered free and without cost to the
second party. This agreement is a part of the con-
tract to which it is attached."

The last sentence of the quotation may be explained
by saying that the instrument was a printed form
which did not contain such a stipulation, and was
added as a "rider" upon the insistent demand of the
plaintiff, before he would execute the agreement. It
is further alleged that plaintiff has duly performed
all the conditions on his part, except that there was a
balance of $6 as principal and $9.44 accrued interest
due on September 20, 1917, and that as to these
amounts, he tendered and offered, in writing, to pay,
and to receive a deed to the premises, and that in
reply to said offer, he received a letter from defend-
ant stating that it was unable to deliver a deed to said
premises until the 30th of November, as it was unable
to secure a release from a trust deed covering the

premises prior to that time. It is averred that this letter was the first notice plaintiff had, that the property was encumbered, and that at all times prior thereto, defendant had fraudulently concealed from plaintiff the fact that the lots were covered by a mortgage or a trust deed; that immediately after receipt of such letter, plaintiff, for the first time, went to Bay City and inspected the premises, thereby discovering for the first time, that defendant had failed to clear the lots, grade the street, or lay the water-main in front of the property. After pleading his reliance upon the terms of the contract, the freedom of the lots from encumbrance, etc., plaintiff declares that but for such covenants he would not have made the payments which were made. Then follow these paragraphs:

"That by reason of the failure of defendant to furnish plaintiff a deed to said premises (to clear said lots from trees, stumps, etc., to grade the streets so as to make it possible for plaintiff to have a means of ingress and egress to said premises, and to lay in the street in front of and adjacent to said premises a water-main for the purpose of furnishing the plaintiff water for domestic purposes), the premises described in the said contract of sale are rendered totally worthless and useless to plaintiff.

"That among other terms and conditions of said contract it is stipulated that time is the essence of said agreement and immediately upon discovery that defendant had falsely and fraudulently concealed from plaintiff the fact that said premises were mortgaged, and that defendant would be unable to execute a deed (upon the payment of the last installment due on Sept. 20, 1917, and upon discovery of the fact that defendant had failed and neglected to clear the lots and to grade the streets in front of and adjacent thereto and to lay the water-mains along said streets in front of and adjacent to said lots), the plaintiff notified the defendant in writing that he would elect to rescind the

said contract and receive back from defendant the payments on account thereof with interest, and thereupon duly tendered to defendant a Quitclaim Deed to said premises, which defendant refused and now refuses to accept."

These are followed by an itemized statement of the payments made, amounting to $1,355.88, his demand therefor, and defendant's refusal.

The answer admits the execution of the contract as set up in the complaint, admits the payments as therein alleged, and after some denials, pleads affirmatively, that there was no time specified in which the improvements named in the agreement were to be undertaken and completed; that prior to and at the time of the execution thereof it was agreed between the parties that such improvements were not to be made until plaintiff was ready to go upon and occupy the land, and that notice of his intention to do so should first be given by him to defendant; that plaintiff has not gone upon the premises to use them, and has never notified defendant of any intention to do so; that under the terms of the contract, the final installment of the purchase price, $6, with accrued interest in the sum of $9.44 became due and payable on September 20, 1917; that plaintiff has failed and refused to pay the same or any part thereof; that defendant is now, and at all times has been ready, able and willing upon payment of the unpaid balance, to deliver to plaintiff a good and sufficient warranty deed, and that such a conveyance has been duly prepared and tendered to plaintiff upon payment of such balance; that defendant has at all times, complied with the terms of the contract, and now is ready, able and willing to perform all of the terms and conditions thereof.

The reply admits the tender of the deed and denies generally the other allegations of the affirmative answer. There was a trial and a decree in favor of plaintiff, from which defendant appeals.

REVERSED AND SUIT DISMISSED.

For appellant there was a brief over the names of *Mr. H. T. Botts* and *Mr. John L. Bozorth,* with an oral argument by *Mr. Botts.*

For respondent there was a brief and an oral argument by *Mr. Wm. H. Trindle.*

BENSON, J.—There are two questions presented upon the appeal. The plaintiff bases his right of recovery, first, upon the theory that early in September he tendered the balance due upon his contract and demanded his deed, but that defendant replied that it would be unable to deliver the same, for the reason that it could not, prior to November 30th, secure a release of the land from the lien of a certain trust deed. The question raised upon this proposition is: Was there such a tender of payment of the purchase price as would put defendant in default by failure to make conveyance?

1. The second proposition upon which plaintiff relies is that the agreement to clear the lots, grade the street, and lay the water-main was a dependent covenant, a failure to perform which would entitle him to rescind. Considering these in the order thus indicated, we note that the evidence of a tender of the purchase price is as follows: On September 12, 1917, plaintiff wrote and mailed to defendant a letter in these words:

93 Or.—30

"Salem, Ore. 9/12, 1917.

"Bay City Land Co.,
    "Portland, Ore.

"Gentlemen:

"I will be glad if you will please inform me how near finished my payments are as I have received no notice for Sept. If I am not mistaken there is not much more to pay and I'm anxious to get my deed and have it done with. Hope to hear soon and that your part of the contract is also fulfilled so I may have clear title. Let me hear at once and also if there is any chance to sell it and oblige,

"Respectfully,
"Lee McCracken,
"2610 Maple Ave., Salem, Ore."

The plaintiff testifies that he wrote another letter to defendant, a few days later, in which he inquired as to whether or not the clearing and street grading had been done, and the water-main laid, and also, "that I was ready to make a payment or to complete payments on the property and finish up the payments when I found out what it was."

This constitutes all of the evidence of a tender. It will be observed that no specific sum is mentioned, and the letter does not offer to pay any sum whatever. The requirements of a sufficient tender in this respect are stated in Hunt on Tender, Section 238, thus:

"In making a tender of money, whether the actual production be dispensed with or not, the tenderer must name the sum which he tenders. Thus, where the person who made the tender had two bank notes twisted up in his hand, enclosing four sovereigns and 19s, 8d, in change, making the precise sum intended to be paid, and the party, without opening it, informed the creditor of the amount, the tender was held good. Best, C. J., said: 'If he had not mentioned the amount, I think it would not have done.' So, in another case, a debtor in passing his creditor said: 'I want to tender

you this money, * * for labor you have done me,' at
the same time holding in his hand a sum equal to the
indebtedness, but named no sum, it was held insuffi-
cient."

The rule is stated in 38 Cyc. 137, thus:

"Nothing short of an offer of everything that the
creditor is entitled to receive is sufficient and a debtor
must at his peril tender the entire sum due, including
all necessary expenses incurred or damages suffered
by the creditor by reason of the default of the debtor,
and a mistake in tendering an amount less than the
sum due is the misfortune of the tenderer, and the
position of the parties remains the same as if no
tender had been made. Furthermore, the tenderer
must name the sum which he wishes to tender, unless
perhaps the exact sum and interest is tendered so
that the tenderee may easily satisfy himself that the
amount is correct. Where the amount due is within
the exclusive knowledge of the creditor, and the cred-
itor on demand neglects or refuses to indicate the cor-
rect amount that is due, the debtor may tender so
much as he thinks is justly due, and if less than the
true amount, the tender nevertheless will be good; and
the same rule obtains where the tenderee deprives the
tenderer of the means of ascertaining the exact amount
due."

The evidence falls far short of these requirements,
and we conclude, therefore, that the plaintiff's first
contention must fail.

2. Plaintiff's second proposition is, that defend-
ant's promise to clear the lots, grade the street, and
lay a water-main, is a dependent covenant, for the
breach of which he is entitled to a rescission, and this
is the conclusion reached by the trial court. The dis-
tinction between dependent and independent cove-
nants is sometimes very shadowy, and frequently is
difficult to determine. There is a dearth of authority

upon the specific question as to the right of a vendee to rescind an executory contract for the sale of land upon the vendor's breach of covenant to make improvements, but we have carefully examined all to which our attention has been directed. The case of *Crampton* v. *McLaughlin Realty Co.*, 51 Wash. 525 (99 Pac. 586, 21 L. R. A. (N. S.) 823), appears to be a leading case upon the subject and contains a very full discussion of the problems involved, citing, and quoting copiously, from all of the available cases bearing upon the subject. This was a case wherein the plaintiff had entered into a contract with the defendant, whereby he agreed to purchase certain real property for the sum of $2,400 in installments, the first payment to be made October 22, 1906, and the last falling due on October 22, 1908. The agreement contained certain building restrictions, and the following covenant:

"Said first parties agree that they will, free of cost to said second party, put in the necessary cement sidewalks, sewer and water-mains and pave the abutting street, within one year from the date hereof."

Plaintiffs made the required payments until the time arrived for making one which became due on October 22, 1907, which was not made, and on October 23d, notified defendants that they elected to rescind the contract for failure on the part of the defendants to put in the cement sidewalks, sewer and water-mains, and pave the abutting streets within one year from the date of the contract, which had been executed on October 22, 1906. The action was then instituted to recover the installments paid. There were other issues raised by the pleadings, but Mr. Chief Justice Rudkin, in the opinion, says:

"Regardless of the merits of these respective contentions, we think there are other reasons why the judgment should be affirmed.  The numerous covenants contained in this contract, aside from the covenant to convey and the covenant to pay the purchase price, are wholly independent of each other, and the only remedy for a breach of such covenants is an action for damages.  It is sometimes difficult to determine whether covenants are dependent or independent, but we think the covenants contained in this contract in relation to building restrictions, improvements, etc., are clearly of the latter class."

In support of this conclusion, the opinion quotes from the following cases which support the same fully: 9 Cyc. 642; *Hunt* v. *Tibbetts,* 70 Me. 221; *Turner* v. *Mellier,* 59 Mo. 526; *American Emigrant Co.* v. *County of Adams,* 100 U. S. 61 (25 L. Ed. 563, see, also, Rose's U. S. Notes); *Tipton* v. *Feitner,* 20 N. Y. 423; *Front Street etc. R. Co.* v. *Butler,* 50 Cal. 574.

In *American Emigrant Co.* v. *County of Adams,* 100 U. S. 61 (25 L. Ed. 563), the rule is stated thus:

"The allegations of the bill to the effect that the Emigrant Company has not fulfilled its engagements with respect to the drainage and settlement of the land, rest in covenant merely, and afford no ground for avoiding the contract.  Where covenants are mutual and dependent, the failure of one party to perform absolves the other and authorizes him to rescind the contract.  But here the contract was largely carried into execution soon after its inception.  The engagements of the appellants to introduce settlers and the like were to be performed in the future; and their performance was not a condition, but, as before stated, rested in covenant.  In case of a breach, they would lay the foundation of an action, but nothing more."

In the State of Washington, the case of *Crampton* v. *McLaughlin Realty Co.,* 51 Wash. 525 (99 Pac. 586,

21 L. R. A. (N. S.) 823), has been followed in a number of cases. In *Toellner* v. *McGinnis,* 55 Wash. 430 (104 Pac. 641, 24 L. R. A. (N. S.) 1082), Mr. Justice Chadwick says:

"*Crampton* v. *McLaughlin Realty Company* has nothing in common with this case. The covenants in that contract were clearly independent under any rule."

And again, in *Spokane Canal Co.* v. *Coffman,* 54 Wash. 645, 648 (103 Pac. 1106, 1107), Mr. Justice Mount says:

"In *Crampton* v. *McLaughlin Realty Co.,* 51 Wash. 525 (99 Pac. 586, 21 L. R. A. (N. S.) 823), we held that covenants to put in sidewalks and other improvements contained in a contract for the sale of real estate were independent covenants. The rule in that case is decisive of this. In this case the promise to pay the purchase price of the land did not depend upon the promise to furnish water at stated times. The latter promise is to be performed after the purchase price is fully paid. It was an independent continuing contract. The fact that the covenant to furnish water was to be performed before all the payments were made was a mere coincidence. The payments were not made dependent thereon."

Counsel for plaintiff contends that this court is committed to a contrary doctrine by the views expressed in *Miller* v. *Beck,* 72 Or. 140 (142 Pac. 603); *Potter Realty Co.* v. *Derby,* 75 Or. 563 (147 Pac. 548), and *Stewart* v. *Mann,* 85 Or. 68 (165 Pac. 590, 1169). We shall therefore give special attention to these cases.

*Miller* v. *Beck,* 72 Or. 140 (142 Pac. 603), was a case wherein there was a contract for the sale of:

"All of tracts numbered twenty-four (24) and twenty-five (25) of the Dimick Homestead Tracts, which said tracts are duly recorded in the office of the county recorder of said Marion County, Oregon; also

a right of way for road purposes along tracts 32 and 33 of said Dimick Homestead Tracts, until such time as the twenty-foot road along the front of said tracts numbered 24 and 25 shall have been opened.''

The right of way along the front of tracts 32 and 33 was subsequently closed, and the vendor refused to open one along the front of tracts 24 and 25. Upon these facts this court held that the vendee was entitled to rescind, saying, by Mr. Justice Burnett:

''Miller engaged to buy, and the company obligated itself to sell, not only the two lots, but also 'a right of way for road purposes along tracts 32 and 33 until * * such time as the twenty-foot road along the front of tracts numbered 24 and 25 shall have been opened.' ''

It was held that these facts justified rescission. A mere statement of the facts differentiates it from the instant case.

*Potter Realty Co.* v. *Derby,* 75 Or. 563 (147 Pac. 548), was a case wherein the plaintiff had undertaken to create a summer resort city. It was an action brought to recover delinquent installments of the purchase price. From the contract itself, it appears that the improvement of the entire town site, to the extent of $100,000 per year until the very extensive improvements therein described should have been fully completed, was the principal consideration. The record discloses that no such improvements had been made, that the only market value that the land had or could have, depended entirely upon the completion of such improvements, and that the plaintiff was an insolvent company, totally unable to perform. There was no question of rescission in the case, and the decision was based upon the language of the contract itself, wherein it was agreed that in the event of default in payment of any installment of the purchase price all payments

theretofore made should be forfeited to the seller and the contract should become void as to both parties without notice. This court simply held both parties to the exact terms of the contract as thus expressed, permitting the seller to keep all the payments it had received, but denying it the right to collect any more, and so the case does not decide the question which now confronts us.

The case of *Stewart* v. *Mann*, 85 Or. 68 (165 Pac. 590, 1169), does not in any manner discuss the problem which we are considering. The situation there was one wherein the vendee insisted, not upon a rescission, but upon an abatement in the purchase price because the fruit trees upon the land had not been cared for as stipulated in the contract, which demand was answered, by the assignee of the original vendor, by returning to the purchaser the payments received subsequent to the assignment, and repudiating all obligations under the contract. This court rendered a decree awarding plaintiff a decree for the return of his payments, because the *vendor* had repudiated the contract. These cases, therefore, are of no assistance in the consideration of the present case. The facts here are substantially like those in *Crampton* v. *McLaughlin Realty Co.*, 51 Wash. 525 (99 Pac. 586, 21 L. R. A. (N. S.) 823), and the evidence discloses that an expenditure of $200 in a very short time would supply the improvements for which the contract calls, and the breach is one that may be readily compensated in damages. We think it is clearly an instance of an independent covenant, for which there can be no rescission. The decree is reversed, and one will be entered dismissing the suit.    Reversed and Suit Dismissed.

McBride, C. J., and Burnett and Harris, JJ., concur.